CUDAHY PACKING COMPANY v. CAROLINE HIBOU, ADMINISTRA-
TRIX.

[46 South., 73.]

1. PARTNERSHIP. *Written articles. Intent of parties.*

A written agreement may when correctly construed create a part-
nership, although the parties did not intend to become partners.

2. SAME. *Creditor and debtor. Payment from profits.*

A creditor is not made a partner of his debtor by an agreement for
the payment of the debt, in instalments or otherwise, out of the
proceeds of the debtor's business, nor by receiving payments
thereunder.

3. SAME. *Third parties. Case.*

An agreement whereby one advanced money and goods to a cer-
tain amount to another to conduct a business, out of the net
profits whereof the notes evidencing the loan were to be paid,
such net profits after payment of the notes to be divided between
the parties as a further consideration for the money and goods,
did not create a partnership as to third persons before payment
of the notes; there being no community of interest in the stock
of goods, etc., or joint ownership in the business, and neither
party being agent for the other.

FROM the circuit court of Warren county.

HON. J. N. BUSH, Judge.

The Cudahy Packing Company, appellant, was plaintiff in
the court below. One Louis Hibou, appellee's intestate, was
defendant there. During the pendency of the suit the defend-
ant died and the cause was revived against Mrs. Hibou as ad-
ministratrix of his estate. From a judgment in defendant's
favor the plaintiff appealed to the supreme court. The facts are
stated in the opinion of the court.

*Bryson & Dabney,* for appellant.

The business to which the goods for which payment is claimed
were sold was that organized and carried on for a time under

the agreement between Magruder Hoxie and L. Hibou, appellee's intestate, and appellant's contention is that the said L. Hibou was under the terms of said agreement, either a partner of Magruder Hoxie or the owner of the Hibou Exchange and the employer of Hoxie, and therefore, in either event, liable for said goods.

The written agreement between the parties being practically the only evidence of the partnership, it becomes necessary to scrutinize that instrument very closely so as to ascertain the intention of the parties, for it is a well established and fundamental rule that in all cases the existence of a partnership depends upon the true contract and intention of the parties as appearing from all the facts of the case. 22 Am. & Eng. Ency. of Law, 25; *Harris* v. *Threefoot,* 12 So. Rep., 335.

"The intent which is controlling is the intent to contract for those things which the law declares constitute a partnership. If the parties intend to enter into such a contract and actually do so, they will be partners although they may have intended to avoid this consequence or may even have expressly stipulated that they are not to be partners. This may be thought to violate the rule that the intent controls, but it does not. In such a case an express stipulation that the parties do not intend to form a partnership simply shows that they have mistaken the legal effect of the agreement which they intended to make. On the other hand, even if the parties intend to be partners, and so expressly stipulate, yet so frame the terms and provisions of their contract as to leave them without any community of interest in the business or profits, they are not partners in fact or in law." 22 Am. & Eng. Ency. of Law, 26; see also *Perry* v. *Randolph,* 14 Miss. (6 Smed. & M.), 335, and *Lynch* v. *Thompson,* 61 Miss., 354.

Mississippi is among the states that have discarded the old doctrine that participation in the profits is the only test of a partnership, but such participation is a strong circumstance to be considered.

In *Fairly* v. *Nash,* 70 Miss., 200, 12 South., 149, it is said "Participation in profits is not conclusive evidence of partnership but it is evidence of same which, in the absence of countervailing evidence, will control."

The character of the participation in the profits, or of the interest of the parties therein is the question primarily to be considered. This seems to be the general law, and our own state has adopted it.

In the case of *Fairly* v. *Nash,* above referred to, Nash and Skellinger had an agreement almost identical with that of Hibou and Hoxie, except that Skellinger was to manage the business of Nash. Although Skellinger participated in the profits he was held to be only an employe or agent for Nash, and not a partner.

On the other hand, in the case of *Tharp* v. *Marsh,* 40 Miss., 158, where Marsh and Pendleton furnished all the capital and Tharp was engaged to buy cotton for them, his compensation to be one-fourth of the profits, it was held that the parties were partners, for they had a community of interest in the profits.

Having now briefly reviewed the law as we conceive it, we invite attention to the agreement between Hibou and Hoxie.

By reading only the first two paragraphs, one would naturally be led to the conclusion that Hibou was merely agreeing to make Hoxie a loan, evidenced by the notes to be paid monthly, and there is no suggestion that Hibou should have any interest in the business, unless it is contained in the provision "that the said party of the second part shall give his entire time, services and attention to the management of said business."

From the remaining part of said agreement, however, we see that Hoxie was first to be paid out of the net profits a salary of $90 a month for his services as manager, and that all that remained of said profits should, at the end of each month, be applied to the payment of said notes until they should be paid in full, and that such profits should be applied on said notes monthly regardless of whether said notes were due or not.

Is it not clear as daylight that Hibou was looking not to Hoxie but to the business, for the payment of the notes? Is it not manifest that Hibou did not regard this as a personal debt from Hoxie but as an advance to the business? Otherwise why should it be stipulated that the notes were to be paid out of the net profits? What difference could it have made to Hibou from what fund the notes were to be paid or whether Hoxie devoted his time to the business, so his notes were paid? Hoxie was first to be paid a salary of $90 a month, by whom? By himself?

Under this agreement the parties had a community of interest not only in the net profits of the business, but in the stock, fixtures, good will, etc., and were in fact partners.

And it is not necessary that their relationship toward each other should have been known to the creditors of the business, for a dormant partner is liable for the debts of the firm whether his connection therewith is known or not. *Lea* v. *Guice,* 21 Miss. (13 Smed. & M.), 656.

*Smith, Hirsh & Landau,* for appellee.

The "agreed statement of facts" shows the relations of the parties, and that partnership was not intended. It appears that Hoxie intended to embark in business, and Hibou was to loan him a sufficient amount of money with which to purchase the license and stock of goods; that the money loaned by Hibou was to be paid in installments, and that the entire management of the business was vested in Hoxie; that net profits of the business were to be applied to the payment of the amount advanced; and that Hoxie was to get $90 per month whether there were any profits or not, and that only in the event there were any profits to be divided after the payment of the debts was Hibou to get any part thereof.

The license was procured in the name of Hoxie; the business was carried on under the sole management of Hoxie, and he announced to the world that he was the proprietor thereof, and he, Hoxie, purchased the goods in controversy.

It is clear that Hibou had no right, dominion nor control over the property; that it belonged to Hoxie who notified the world (as the notice in evidence shows), that he was the proprietor of said property.

Therefore the question is narrowed down to the plain proposition whether Hibou, who was a heavy creditor of Hoxie, having lost some five or six thousand dollars, must lose more money; because there was some stipulation in the agreement that he was to be interested in the profits.

Whatever might have been the law in former years, it is now established, we submit first, that a mere interest in profits does not constitute a co-partnership, and, second, that the partners must be partners among themselves in order to make them liable as partners to third persons.

It is now undoubted that the stipulation in the agreement that one of the parties thereto was to receive a part of the profits —one-half or more or less—does not constitute him a partner for that reason.

*Fairly* v. *Nash,* 70 Miss., 193, 12 South., 149, to which plaintiff refers is an authority for the administratrix. While the court, in the discussion of the particular facts of that case held that no co-partnership existed, the court did not, as our friends seem to contend, hold that under another state of facts, especially like those at bar, a partnership did exist. On the contrary the court expressly held: "An agreement to share in the net profits of a business is not a conclusive test of a partnership. The intent of the parties, if not consistent with the terms of the contract, will control."

CALHOON, J., delivered the opinion of the court.

This action was originally brought against Louis Hibou for divers articles alleged to have been sold to him by the appellant. During the progress of the litigation Louis Hibou died, and the case was revived in the name of Caroline Hibou, administratrix of his estate. The case was tried on an agreed state of

facts, which, notwithstanding prolixity, we reproduce. It is as follows:

### Agreed State of Facts.

"The following agreement was made between L. Hibou, defendant's intestate, and Magruder Hoxie on the 15th of October, 1904, viz.:

'This agreement, made and entered into this 15th day of October, 1904, by and between L. Hibou of Vicksburg, Miss., party of the first part, and Magruder Hoxie, of Vicksburg, Miss., party of the second part, witnesseth: Whereas, the said party of the second part desires to engage in the saloon, restaurant, and hotel business, and in that certain building numbered 112 Levee street in Vicksburg, Miss., and for that purpose desires that said party of the first part shall advance him, said party of the second part, certain sums of money, and furnish goods, wares, and merchandise aggregating in value four thousand and twenty dollars and five cents ($4,020.05) : Now, therefore, it is expressly understood and agreed between the said parties that, in consideration of the said party of the first part furnishing the said party of the second part said money, goods, wares, and merchandise of the value aforesaid, the said party of the second part shall give his entire time, services, and attention to the management of said business so to be conducted in the said building, and shall repay to the said party of the first part the said sum of four thousand and twenty dollars and five cents ($4,020.05) in monthly installments, commencing on the 1st day of January, 1905, as is evidenced by those twenty-four (24) certain promissory notes bearing even date with this instrument, executed by the party of the second part, payable to the order of the said party of the first part; the first of said notes being due and payable on the said 1st day of January, 1905, one of said notes maturing on the 1st day of each of the next succeeding twenty-three (23) months, all of said notes except the last one maturing being for the sum of one hundred and fifty dollars and fifty cents ($150.50), and the note last

maturing being for the sum of one hundred and six-seven dollars and fifty-five cents ($167.55), all of said notes bearing interest from maturity until paid at the rate of 10 per cent per annum. It is further understood and agreed that the net profits of the management of the said business shall be applied by the said party of the second part to the payment of the notes hereinbefore referred to; and it is further expressly understood and agreed that, as a further consideration for the said money, goods, wares, and merchandise furnished as aforesaid, the party of the second part agrees that all of the net profits accruing from the management and operation of said business after the payment of the said notes as aforesaid shall be divided share and share alike between the said party of the first part and the said party of the second part. It is further expressly understood and agreed that until the net profits earned by said business shall have liquidated and paid off the said promissory notes as aforesaid the said party of the second part shall be entitled to draw for his own use the sum of ninety ($90) dollars per month, and after the said notes have been paid as aforesaid, the profits shall be divided share and share alike as aforesaid, provided that the proportion to which the said party of the second part shall be entitled and which he shall receive shall never be less than ninety dollars ($90) per month. It is further expressly understood and agreed that the net profits of the said business shall from time to time be applied to the payment of the promissory notes hereinbefore referred to, whether the said notes have matured or not.

'In testimony whereof, the said parties of the first and second parts have hereunto set their hands in duplicate this 15th day of October, 1904.                    L. Hibou.

Magruder Hoxie.'

"Shortly thereafter, to-wit, during the month of October, 1904, a saloon, restaurant, and hotel business was opened up in a building on Levee street, in Vicksburg, Miss., and was conducted for about one year under the personal management of

Magruder Hoxie, under the name and style of "Hibou Exchange, Magruder Hoxie, Proprietor"; that the goods for which payment is demanded in the account herein were ordered from time to time over the telephone by said Magruder Hoxie, and were delivered to the said Hibou Exchange, and received by the said Hoxie, or by employes, at said exchange; that there is no dispute over the items of said account, and that the goods were used by the said Hibou Exchange in its regular business as a hotel, restaurant, and saloon; that after said business was conducted for some months it was closed up, and the said Magruder Hoxie went into voluntary bankruptcy; that the license and privilege tax for the sale of said vinous and spirituous liquors in said saloon was in the name of said Magruder Hoxie, and paid for by him, and posted in a conspicious place in the saloon, and that the cards and letter heads and notices were all headed 'Hibou Exchange, Magruder Hoxie, Proprietor.' "

Thereupon the defendant offered in evidence the promissory notes referred to in the contract between L. Hibou and Magruder Hoxie, aggregating $4,020.05, and offered to prove that these notes had not been paid, and that in addition Magruder Hoxie was indebted to the estate of L. Hibou in the sum of about $1,200 for liquors sold and money advanced by the said L. Hibou to said Hoxie. This evidence was objected to by the plaintiff, except in so far as the notes were introduced as a part of the contract between Hibou and Hoxie, which objection was not ruled upon by the court. This was all the evidence in the case, and the court thereupon found for the defendant.

The question is whether the agreement made establishes a partnership as between the parties themselves. If it does not, it is clear in this case that there was no partnership as to third parties. There could be no reasonable pretense of it, certainly before the debt to Hibou was paid. There is here no holding out to the world as partners, and so to establish such relation it must appear from the agreement itself. An agreement may make a partnership by its phraseology and legal construction,

242          Packing Co. *v.* Hibou.          [Mch., 1908.

Opinion of the court.

regardless of intent, or even against its express repudiation of such intent. Is that the case here? If there was a partnership between Hoxie and Hibou, it must appear from this contract. From this only we are to ascertain the intent of the parties, which intent must control, unless the language makes a partnership regardless of it, or even of assertions in it to the contrary. *Perry* v. *Randolph,* 6 Smed. & M., 335; *Harris* v. *Threefoot* (Miss.), 12 South., 335. It is correctly held in *Fairly* v. *Nash,* 70 Miss., 199, 12 South., 149, as "well settled" that the "mere sharing of the profits of a business does not constitute one a partner. The question is whether the profits are taken as in the distribution of a joint estate, in which event there is a partnership, or, on the other hand, as compensation for services as an agent or servant, the title in such profits passing to such person by the act of distribution and in the accumulation, in which case the contract is one of principal and agent, and not of partnership."

If Hibou had a claim to the profits because of joint interest, and not merely to secure debt, there was a partnership. If, however, he was only looking to the profits of the business under Hoxie's management for payment of his debt, this does not make partnership, because in that case it remained, if finally unpaid, a personal debt from Hoxie. Division of net profits "share and share alike" after payment of the notes does not make a partnership in *praesenti,* even if it does in *futuro* on condition. It is not to be seen in the case before us that there was any community of interest in the stock of goods, fixtures, furniture, etc., nor any joint ownership in the business, nor that each was agent of the other. Hibou was not the owner and Hoxie his agent, as was the relation of the parties in *Farley* v. *Nash,* 70 Miss., 196, 12 South., 149, because in that case these words are found: "That the said Skellinger shall take charge of the business as agent and manager thereof for the said Nash," and there was signed "W. S. Skellinger, Agent for D. A. Nash." The text of 22 Am. & Eng. Ency. of Law (2d ed.), p. 30,

in this: "A *bona fide creditor,* receiving payment of his debt by installment or otherwise out of the business, is not thereby made a partner." And in support of it are cited authorities from fifteen states, and it has our sanction; and this is the most that can properly be said of the case in hand. See notes to *Clifton* v. *Howard,* 89 Mo., 192, 58 Am. Rep., 105, and the case of *Dubos* v. *Jones,* 34 Fla., 539, 16 South., 392. And these notes indicate great ability and research and are referred to now in support of all the propositions in this opinion.

We refer to the same book, 58 Am. Rep., and page and the authorities cited there to show that the position that the people in this case were partners, because Hibou might bring his suit in equity for an account of profits in order to fix the amounts coming to him, is untenable. Mr. Irving Brown, in his notes, shows that the fallacy of this lies in the assumption that no other than a partner can maintain such a suit, and says it is well settled that any person who has a right to a certain share of profits, though he be not a partner, may file a bill for an account of such profits. Mr. Page, in volume 2 of his admirable work on Contracts, discusses this question of sharing profits, and shows that the old arbitrary distinction in England, to the effect that a partnership always existed while there was a sharing of the profits as profits, is overthrown, and that at modern law contracting for a share of profits does not constitute a partnership, if the parties do not intend a community of interest. See volume 2, p. 1473. He shows, also, on page 1472, that without community of interest in the stock the mere sharing of profits and losses by special contract does not constitute a partnership. In 22 Am. & Eng. Ency. of Law (2d ed.), 20, it is shown that, although there is a sharing of the profits of a business, there is no partnership, unless the parties are partners in fact as between themselves, or have held themselves out as partners under such circumstances as to estop them from denying their partnership. This work says, on page 22, that "profit sharing has been almost universally abandoned as the conclusive test of partnership," although it is still

an important consideration, of course, as evidence tending to show partnership. On page 27 it is made plain that there must be the intention of the contracting parties "to carry on a business and share profits between them as common owners or joint proprietors of the business." And on page 28 it is said that "where the intention is to share the profits, not as common owners, but as a personal debt due from some of the associates to the others, the amount of which is measured by profits, the persons so sharing profits are not partners"; and the text proceeds to say: "That this is the true test of partnership has long been dimly recognized in the cases, though only very recently has it been fully comprehended and consistently applied."

We think this case should be, and it is, *affirmed.*