**MILLERS' INDEMNITY UNDERWRITERS
v. PATTEN et al. (No. 422–3784.)***

(Commission of Appeals of Texas, Section A.
April 25, 1923.)

**1. Master and servant ⊗⇒361—Contract contemplating acquisition of interest in cotton gin held to constitute one an "employé" within Compensation Act and not a partner.**

Where a decedent, killed while operating a cotton gin, was employed at $100 a month under an agreement whereby he was to operate the gin for such sum, and in case the enterprise produced net profits he was to acquire a one-third interest in the property, although such agreement was entirely executory, the deed and notes representing the partnership interests never having been delivered, *held*, that decedent was an "employé" within the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz), and not a partner, notwithstanding the remote contingency that his services might ultimately result in his acquiring a joint interest in the plant.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Employé.]

**2. Master and servant ⊗⇒418(5)—Submission of issue of partnership in compensation case held harmless.**

In a suit to set aside an award under the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246zzzz) where the claim was that the person injured was a partner, and not an employé, but there was no issue of partnership, submission of that issue to the jury, if error, *held* immaterial where the facts showed that decedent was an employé, and not a partner and a finding against partnership was returned.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by the Millers' Indemnity Underwriters against Maggie May Patten and others, to set aside an award of the Industrial Accident Board allowing compensation for the death of W. H. Patten, deceased. Judgment for defendants was affirmed by the Court of Civil Appeals (238 S. W. 240), and plaintiff brings error. Affirmed as recommended by the Commission of Appeals.

Harry P. Lawther, of Dallas, for plaintiff in error.

A. T. Cole, of Clarendon, for defendants in error.

GERMAN, J. Millers' Indemnity Underwriters, plaintiff in error, brought this suit against Mrs. Maggie May Patten and her children, defendants in error, to set aside an award of the Industrial Accident Board, which allowed compensation to defendants in error as the wife and children of W. H. Patten, deceased. A trial of the case in the district court of Hall county, Tex., resulted in a judgment for defendants in error, awarding compensation in weekly installments for 360 weeks. The Court of Civil Appeals at Amarillo affirmed the judgment of the trial court. 238 S. W. 240. W. H. Patten was killed in the course of his employment while working at a gin situated at Brice, Hall county.

The sole question presented for decision is whether or not Patten, at the time of the accident which resulted in his death, was an employé of the Memphis Cotton Oil Company, in contemplation of the Workmen's Compensation Act (Vernon's Sayles' Ann. Civ. St. 1914, arts. 5246h–5246 zzzz), that company having at the time a policy written by plaintiff in error, providing compensation for its employés under the provisions of the Compensation Law. The trial court and the Court of Civil Appeals decided this question upon a finding of the jury that Patten was not a partner with the Memphis Cotton Oil Company, and therefore was an employé of that company; the defense set up by plaintiff in error being that he was a partner, and therefore not entitled to compensation under the provisions of the policy and the law.

The petition for writ of error is based solely upon the contention that the evidence conclusively showed that Patten was a partner with the Memphis Cotton Oil Company in the operation of the Brice gin, that the trial court erred in instructing the jury upon that issue, and that the finding of the jury was contrary to the law and the evidence. It is claimed that the testimony of F. U. Foxhall, president of the Memphis Cotton Oil Company, is uncontradicted, and is all the evidence showing the terms of the contract and the relation between Patten and the company. The Court of Civil Appeals held that the evidence was conflicting upon the issue of partnership, but, in view of the disposition we make of the case, it may be conceded that the testimony of Foxhall is uncontradicted.

Briefly, the controlling facts as testified to by Foxhall are these: The Memphis Cotton Oil Company is a corporation, and was the owner of seven acres of land in Hall county, on which was located the Brice cotton gin, a residence, and other improvements. Foxhall, as president of the oil company, in July and August, 1919, carried on negotiations with W. H. Patten with reference to operating the gin and acquiring an interest in the plant. About the middle of August, 1919, these parties made an oral agreement, by the terms of which Patten was to buy a one-third interest in the gin property for a consideration of $2,200. Patten was to give his notes for this amount, with the understanding that, if there were any net profits from the operation of the gin, a one-third of such net profits

was to be applied as payment on the principal and interest of these notes. If the notes were ever paid Patten, in this way, would acquire an interest in the plant. If there were no net profits, no payments were to be made, and Patten, of course, would acquire no interest. It was also agreed that Patten was to run the gin, and have control of its operation, with authority to employ help, make repairs, etc., for which he was to receive a salary of $100 per month. In pursuance of this agreement, about August 16, 1919, Patten moved with his family into the house situated on the seven acres of land, employed labor, repaired the gin, and began operating the same, doing a part of the manual labor himself, his duties, among other things, being to run one of the ginstands. All expenses thus incurred were paid by the Memphis Cotton Oil Company. On October 16, 1919, while Patten was working at one of the ginstands, he was caught in the line shaft, and received injuries from which he shortly died.

Foxhall also testified that a resolution was prepared and signed by the directors of the Memphis Cotton Oil Company authorizing him to sell a one-third interest in the plant to Patten; that he had a deed prepared, which he executed, and notes were prepared for Patten to sign. The deed had not been delivered nor the notes executed at the time Patten was killed. Shortly after Patten's death the Memphis Cotton Oil Company paid Mrs. Patten $200, the amount due for the two months' services of her husband, and the deed and notes were destroyed by Foxhall.

The Memphis Cotton Oil Company was to advance all money necessary to pay for repairing the gin and operating the same, including the salary of Patten. This company kept an account against the Brice Gin Company, to which were charged all amounts advanced in carrying on the business. This account was to be credited with amounts received from the business. If anything remained of the proceeds from the enterprise, after refunding all amounts paid out by the oil company, it would be treated as net profits. Foxhall testified that, if the business did not make as much as the $1,200 per year paid Patten as a salary, the company would be the loser, as Patten was not to return or be charged with any part of what might be lost on the amount paid him as a salary.

We think it very clear that at the date of the death of Patten the agreement between him and the Memphis Cotton Oil Company was of a two-fold nature, or can be properly divided into two distinct parts: First, an existing contract of employment, under which Patten was to run the gin, primarily for the benefit of the Memphis Cotton Oil Company, and for which he was to receive a salary of $100 per month, to be paid by the Memphis Cotton Oil Company, and to be refunded to it out of income from the business, if there was any, but not otherwise; second, an unexecuted agreement having for its purpose the acquisition by Patten of a one-third interest in the property, by reason of which, if ever consummated, he would become a joint owner of the property. This seems to have been what was contemplated by Foxhall from the beginning of the negotiations. In his letter of July 9th to Patten, referring to the gin plant, he says: "We would like to sell you an interest and have you run it." And, again, in his letter of July 26th, he uses this language: "We are depending on you to run the gin this season." And near the close of that letter he adds: "Will sell you an interest in the plant at less than it was offered to you." The agreement as finally concluded provided for the running of the gin and for the purchase of an interest in the property by Patten. It seems to us very apparent, then, that the parties had two distinct things in mind: First, Patten was employed to run the gin and was to receive compensation for that service, regardless of whether net profits were realized or not; and, second, he had the privilege and it was the intention for him to acquire an interest in the plant, provided there was a realization of net profits sufficient for him to pay for such interest. The first agreement became effective when Patten began his work. The second agreement was wholly unexecuted. Even if the deed had been delivered and the notes signed by Patten, he would have had no interest in the property until there was a realization of net profits. As to what would have been the relation between Patten and the company if the notes had ever been paid it is not necessary for use to determine. While an agreement to share net profits is a circumstance, under some conditions, indicating an intention to form a partnership, yet we think there is no case holding that an agreement under which one party is to apply a part of prospective profits as a consideration for an interest in the business, while receiving a salary as compensation for his services, creates a present partnership.

[1] Patten was killed while actually performing his contract of hire to "run the gin." The main consideration for that contract was the salary of $100 per month, which was being paid by the Memphis Cotton Oil Company. This relation was sufficient to bring him within the purview of the law, which provides:

"Employé shall mean every person in the service of another under any contract of hire, expressed or implied, oral or written."

We do not think it can be said that, because there existed a remote contingency that his services might ultimately result in his acquiring a joint interest in the plant, this

created a present partnership, and Patten was an employé of that partnership.

We do not find it necessary to discuss the principles relating to partnerships, or undertake to formulate a definition of partnership that would apply to a situation of this kind, as we do not think the issue is raised by the evidence in the case. Patten was killed while engaged in work for the Memphis Cotton Oil Company, and we think the contract under which he was working made him an employé. The probable consequences of the additional agreement for acquiring an interest in the property did not change that relation.

None of the cases applying the ordinary rules of partnership being applicable, it has been difficult to find cases as authority under the particular state of facts of this case. However, the case of Murray Ginning System Co. v. Bank (Tex. Civ. App.) 61 S. W. 508, is almost a parallel case. There a party had a contract with a ginning company to take charge of a gin plant and run it through the cotton season of 1895; the company to furnish him with everything necessary to fix it up, and to pay him $50 per month until ginning began and $60 per month throughout the ginning season, together with one-tenth of the net proceeds. The contract otherwise provided that it was not to prevent a sale of the property being made. Held, that it did not make him a partner, but only an agent of the company in the business. The case of Cudahy Packing Co. v. Hibou by the Supreme Court of Mississippi, 92 Miss. 234, 46 South. 73, 18 L. R. A. (N. S.) 975, is perhaps still nearer in point. There one party furnished the goods, wares, and merchandise necessary to open a certain business. The other party contributed his entire time and services to the management and operation of the business. The second party executed to the first party his notes, bearing interest for the value of the stock. The second party was to receive $90 per month for his services, and the entire net profits of the business were to be applied to the payment of the notes. After the payment of the debt the net profits were to be divided between the two; but the second party was never to receive less than $90 per month. It was held that this did not constitute a partnership, and on that point the court say:

It is "'well settled' that the 'mere sharing of the profits of a business does not constitute one a partner. The question is whether the profits are taken as in the distribution of a joint estate, in which event there is a partnership, or, on the other hand, as compensation for services as an agent or servant, the title in such profits passing to such person by the act of distribution and in the accumulation, in which case the contract is one of principal and agent, and not of partnership.' If Hibou

had a claim to the profits because of joint interest, and not merely to secure debt, there was a partnership. If, however, he was only looking to the profits of the. business under Hoxie's management for payment of his debt, this does not make partnership, because in that case it remained, if finally unpaid, a personal debt from Hoxie. Division of net profits 'share and share alike,' after payment of the notes does not make a partnership in præsenti, even if it does in futuro on condition."

It is perfectly clear that Patten was not to share as a principal in the profits of the business, as a present owner of an interest therein (Fink v. Brown [Tex. Com. App.] 215 S. W. 849), but was merely to share in prospective profits for the purpose of paying for an interest in the plant. This did not constitute him a partner.

A partnership being the result of intention, based upon contract, the fact that the Memphis Cotton Oil Company as a corporation could not legally make a partnership with Patten is a strong circumstance to indicate that they did not intend to enter into such relation.

[2] There being no issue of partnership, if the trial court erred in submitting that matter to the jury, such error is immaterial.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.