pellant's testimony. It was the province of the court to determine the credibility of the parties and the weight to be given their testimony. Article 4633, R. S. 1925. This the trial court did in favor of the appellee. Certainly there is not such "full and satisfactory" evidence in the record as would authorize us to disturb the trial court's findings and judgment.

The judgment of the trial court is therefore affirmed.

Affirmed.

## NEW AMSTERDAM CASUALTY CO. v. HARRINGTON. (No. 11998.)

Court of Civil Appeals of Texas. Fort Worth.
Oct. 13, 1928.

Rehearing Denied Nov. 24, 1928.

See, also, 283 S. W. 261; 297 S. W. 307.

Taylor, Muse & Taylor, of Wichita Falls, and E. G. Senter, of Dallas, for appellant.

Davenport & Crain, of Wichita Falls, and W. L. Scott, of Olney (R. Wayne Frank, of Wichita Falls, of counsel), for appellee.

DUNKLIN, J. While engaged in the course of his employment in drilling an oil well, C. F. Harrington sustained injuries. The Industrial Accident Board allowed him compensation for those injuries, to be paid by the New Amsterdam Casualty Company under a policy issued by that company in the name of Dr. L. F. Gragg, as employer of Harrington for work on the lease. An appeal was prosecuted from that award by the insurance company to the district court, and a trial of the issues there made by Harrington and the insurance company resulted in a judgment in favor of Harrington, which was later reversed by our Supreme Court, as shown in 290 S. W. 726, to which reference is made for further details of the facts and pleadings of the parties. Upon a second trial in the district court, Harrington again recovered, and this appeal has been prosecuted by the insurance company from that judgment.

In the opinion on the former appeal (290 S. W. 726) it was said: "The uncontradicted evidence shows that Harrington was injured in the course of his employment while working on said Benson lease for a copartnership, composed of Gragg, Butler, Lynch, and others, whose names are not disclosed. The distinguishing name of the copartnership, if any, was not definitely shown by the evidence."

The statement there made applies also to the evidence introduced upon the last trial. It was further pointed out in the former opinion that the insurance policy sued on gives the name of the employer as Dr. L. F. Gragg, described therein as an individual, and that, in the notice given by the insurance company to the Industrial Accident Board of the issuance of the policy, the employer was designated as "Dr. L. F. Gragg (firm name under which business is conducted at Olney, Texas)." It is further pointed out that, in the notice given by Harrington to the Industrial Accident Board of his injuries, it is stated that he sustained his injuries "while in the employ of Butler, Gragg, and Lynch, employers." The former judgment was reversed because of the absence of any allegation in Harrington's pleading to support a recovery, based on his employment by the partnership firm; the allegations in the petition upon which he went to trial being that he sustained his injuries while working as an employee of L. F. Gragg.

The last trial was upon an amended pleading by Harrington, in which it was alleged, in substance, that he sustained his injuries while working as an employee of a partnership firm composed of Dr. L. F. Gragg and his associates, including Butler, Lynch, and others unknown to the pleader, which fact was known to the insurance company through its duly authorized agent before the policy was issued, and that it was the intention of the parties to insure the employees of that firm; the policy being issued in the name of L. F. Gragg only, as a matter of convenience and as a designation of the firm name.

We overrule all assignments of error addressed to the admission of evidence to support those allegations, and to the finding of the jury sustaining them, and to the judgment based thereon. In general terms, the ground upon which those assignments are predicated is the absence of any pleading or evidence to show mutual mistake, fraud, or accident. The alleged understanding and in-

tention of the parties was not stipulated in the policy. It is our conclusion that it was not necessary to reform the wording of the policy in the respect noted, in order to admit proof of the real intention and understanding of the parties thereto. The proof introduced to show that before the issuance of the policy the insurance company knew that Harrington was working for the partnership firm composed of Gragg and his associates, and that it was the intention of the insurer to insure all employees of that firm, related merely to the identity of the employer, which, according to the finding of the jury, was known to the insurer as the partnership firm. Unquestionably, the insurance company intended that the policy which it issued should cover injuries sustained by the employees of the insured, which, according to the evidence and findings of the jury, it knew was a partnership composed of Gragg and his associates. See 2 Elliott on Contracts, § 1664; 1 Williston on Contracts, § 302; 3 Williston on Contracts, § 1599; McCord-Collins Co. v. Pritchard, 37 Tex. Civ. App. 418, 84 S. W. 388, writ of error refused; Security Casualty Co. v. Hunt (Tex. Civ. App.) 294 S. W. 695.

■ Appellant, among other defenses, specially pleaded the provision in the policy that none of its provisions could be waived or altered except by indorsement thereon signed by the president, or vice president, or secretary, or his assistant, and that notice to any other agent of any fact should not effect a waiver or change in any part of the contract. That defense was not available, since the proof conclusively showed that Cravens, Dargen & Co. were the general agents of the insurer, and that they represented the company in the negotiations with Dr. Gragg, and, with full notice of all the facts found by the jury, delivered the policy and collected for the insurer the premiums thereon. L. & L. & Globe Ins. Co. v. Ende, 65 Tex. 118; Wagner v. Westchester Fire Ins. Co., 92 Tex. 549, 50 S. W. 569; St. Paul Fire Ins. Co. v. Kitchen (Tex. Com. App.) 271 S. W. 893; Am. Central Ins. Co. v. Buchanan-Vaughan Auto Co. (Tex. Com. App.) 271 S. W. 895.

■ Error is assigned to the refusal of the trial court to submit to the jury the following special issue: "Was Harrington working, at the time of the injury, under an agreement which provided that he should receive as part compensation for his labor an interest in the well or in the oil lease upon which he was at work?" It is contended that, if Harrington was working under such an agreement, then he was a partner with Gragg and others in the enterprise, and therefore was not an employee, within the meaning of the provisions of the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309).

The evidence pointed out and relied on to support that contention consists chiefly of a statement in writing signed by Harrington, which, after reciting his employment by Dr. Gragg to work on the Benson lease, concludes as follows: "I made a deal with him to give me half pay and the other half of my pay was to be an interest in the lease; we had a contract to that effect, which I signed; he paid me for the work I did at $4 per day, and I still have an interest in the lease; he has sold the lease since, settled with some of the boys, and others he has not settled with. This contract was made with Dr. Gragg about the 1st of April, 1923."

If it be true that the ownership by Harrington of an interest in the lease, which is real property, would in law make him a partner, then the evidence must be sufficient to show a legal conveyance of such interest, or else a contract for such interest specifically enforceable in a court of equity. The evidence quoted was too uncertain and indefinite to establish title to any interest whatever in the lease. It fails to fix the extent of interest which Harrington was to receive from Gragg, and fails to give any data from which the same could be determined. And the issue which appellant requested the court to submit to the jury was likewise objectionable for lack of clarity, and, for that reason alone, was properly refused by the trial court. Furthermore, it is fairly deducible from the evidence that the agreement, if any, of Gragg to convey to Harrington an interest in the lease was insufficient to prove a partnership, because it was dependent on future contingencies, such as are noted in the decisions of Millers' Indemnity Underwriters v. Patten, 238 S. W. 240, by the Court of Civil Appeals, and affirmed by our Supreme Court in 250 S. W. 154; Cudahy Co. v. Hibou, 92 Miss. 234, 46 So. 73, 18 L. R. A. (N. S.) 975.

■ There was no error in permitting Cooper, the local agent of appellant, to testify to the contents of a letter he wrote to appellant's general agents before the policy was issued, and along with Gragg's application for the policy, telling them, in substance, that the policy was to be issued to Gragg for the use and benefit of him and others who were jointly interested with him in the lease and its development. Possession of the original by the general agents was the possession of appellant, and the notice given by appellant to the Accident Board of the issuance of the policy showed that it was issued to the partnership firm, proving conclusively that it had received the letter written by Cooper, to which the objection was made; no evidence to the contrary being offered. And for the same reason the court did not err in overruling appellant's motion for a continuance on the ground of surprise by the admission of such testimony of Cooper. See, also, M., K. & T. Ry. Co. v. Johnson (Tex. Civ. App.) 193 S. W. 728, and authorities there cited; McCown v. Schrimpf, 21 Tex. 22, 73 Am. Dec. 221; Allen v. Traylor (Tex. Com. App.) 212

S. W. 945; U. S. Co. v. Liner (Tex. Civ. App.) 300 S. W. 641.

The following are special issues submitted to the jury and their findings thereon:

"(1) Did the plaintiff, New Amsterdam Casualty Company, by the issuance of the policy introduced in evidence intend to provide compensation insurance for the employees of the copartnership composed of L. F. Gragg, Mike Lynch, F. E. Butler and others? Answer: Yes.

"(2) Was the policy issued in the name of L. F. Gragg issued for the use and benefit of the copartnership of L. F. Gragg and others and its employees? Answer: Yes.

"If you have answered special issue No. 1 'Yes,' then answer the following:

"(3) Was the defendant, C. F. Harrington, in the employ of the copartnership of L. F. Gragg and others on or about April 10, 1924? Answer: Yes.

"If you have answered the above issue 'Yes,' then answer the following:

"(4) Did the defendant, C. F. Harrington, suffer any injuries while engaged in the performance of his duties to his employers on or about April 10, 1924? Answer: Yes.

"If you have answered the preceding question 'Yes,' then you will answer the following question:

"(5) Did the injuries suffered by the defendant, C. F. Harrington, result in his total incapacity? Answer: Yes.

"In answering the foregoing questions you are charged that the term 'total incapacity,' as used in the Workmen's Compensation Act, does not imply an absolute disability to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such way as to enable him to procure and retain employment is regarded as totally incapacitated.

"If you have answered the preceding question 'Yes,' then answer the following question:

"(6) Was such total incapacity, if any, permanent? Answer: Yes.

"If you have answered special issue No. 6 'Yes,' then you will answer the following question:

"(8) Under all of the evidence in this case, would it work a manifest hardship and injustice upon the defendant, C. F. Harrington, if the compensation, if any, was paid in weekly installments? Answer: Yes.

"Gentlemen of the Jury: I will give you the following definition, which will guide you in answering the issues following same: 'Partial permanent incapacity' means where an employee, by reason of an injury which is of a permanent nature and duration, sustained in the course and arising out of his employment, whereby he is only able to perform part of his regular employment or labor of less remunerative class, whereby he suffers a depreciation or reduction in his earning capacity. * * *

"If you have answered special issue No. 1 'No,' then you need not answer this special issue; but, if you have answered same 'Yes,' then you will answer the following special issue:

"(14) At or before the time said policy of compensation insurance involved herein was issued at Houston, Texas, by the New Amsterdam Casualty Company, through its general agents, Cravens, Dargens & Co., did said agents know that the name used therein and stated therein as employer and insured—that is, L. F. Gragg—did not truly and fully name all of the parties making up said partnership interested with Gragg in the drilling of said well on the lease mentioned in said policy? Answer: Yes.

"(15) What was the average weekly wages which was earned by employees—that is, drillers—of the same class and kind, as was the claimant, C. F. Harrington, working substantially the whole of the immediate preceding year before April, 1924, in the same or neighboring vicinity of Olney, Texas? Answer: $60.00."

■ Without undertaking an extended review of the testimony, we believe it sufficient to say that we find the same sufficient to sustain all those findings, and we conclude, further, that those issues were all properly tendered in Harrington's pleadings. Nor do we believe that issue No. 5 was subject to appellant's objection that it assumed that Harrington had already suffered total incapacity as a result of his injury. Especially is this true in view of the fact that the court also submitted the issues of "partial incapacity" and "partial permanent incapacity" in like language, to be answered in the event of a failure to find on other issues that Harrington had suffered "total permanent incapacity."

■ We conclude, further, that the definitions given by the court of what would constitute "total permanent incapacity," within the contemplation of the Workmen's Compensation Law, were correct, being substantially the same as were approved in such decisions as Wilson v. Hagins, 116 Tex. 538, 295 S. W. 922, and Standard Ins. Co. v. Williams (Tex. Civ. App.) 4 S.W.(2d) 1023. And under the same authorities, and the decision in Texas Emp. Ins. Co. v. Wright (Tex. Com. App.) 4 S.W.(2d) 31, and upon the evidence adduced upon the issue of lump sum settlement, and the findings of the jury on that issue, the recovery for a lump sum must be sustained.

■ There was no error in the refusal of the court to submit appellant's requested issues Nos. 11, 12, and 13, inquiring whether or not, in his testimony on the trial or in his dealings with appellant, Harrington had fraudulently or innocently exaggerated his injury, or whether he was physically or mentally capable of making an accurate statement of his injury. Clearly, none of those is-

sues was an ultimate controlling issue of fact, favorable to either plaintiff or the defendant; all of them being of an evidentiary character only. Peavy v. Hardin (Tex. Civ. App.) 288 S. W. 588.

█ Error is assigned to the refusal of the court to submit this issue: "Can you now, from the evidence before you, reasonably determine what the average weekly earnings of Harrington were for 12 months preceding the injury?"

In connection with that assignment, appellant insists that, under the testimony adduced, none but a finding in the negative could have been made upon that issue. A sufficient answer to this assignment is the fact that plaintiff's recovery of a lump sum was not based on his average weekly earnings; but upon the finding by the jury that $60 was the average weekly wage paid to drillers of the same class with plaintiff, working substantially the whole of the year preceding the injury, in the same vicinity of Olney, Tex. Recovery on that basis was permissible under the provisions of article 8306 (section 10) and article 8309 (subd. 2 of section 1), and the finding of the jury thereon was amply supported by the evidence.

Plaintiff testified that he had been a practical oil driller 17 or 18 years; that. he was 55 years old; that during the year preceding his injury he had worked for Mr. Newman, at Olney, for a wage of $10 a day; for Mr. Knapp about four months for from $12 to $15 a day; for Mr. Redland and other persons in Oklahoma for $12 and $15 a day; that at the time of his injury he had worked six days for Mr. Gragg, and immediately prior to that employment he had worked at the same employment for another man ·in Texas; and that during the year next preceding his injury he had been paid a total of $2,675 for his services as an oil driller. He further testified as follows: "I know the usual and customary wage paid drillers in the vicinity of Olney during 1923 and 1924 for a six-day week job. I will say $10 was the usual and customary price paid on cable rigs. Yes; I mean by that $10 a day. Usually they worked on Sunday."

Harry Hines testified that he had been engaged as an oil driller in the district embracing Archer and Willbarger counties, and at Olney, and knew that the customary wages paid oil drillers in that vicinity was $10 to $12 a day; and John Davenport also testified that the customary wages paid for such work in the same vicinity were from $8 to $10 a day.

While the former appeal was still pending in the Supreme Court on a motion for rehearing, after it had reversed the judgment of the trial court, C. H. Harrington executed to one Dan Quesenberry an assignment of his claim for compensation under the insurance policy involved in this suit. In consideration for that assignment, the sum of $2,200 was paid, which, as is conclusively shown by the record on this appeal, was furnished by the appellant insurance company; Quesenberry acting in the transaction for and on behalf of the insurance company. The insurance company pleaded that payment as full satisfaction of Harrington's cause of action, asserted by him upon the last trial of the case, based on amended pleadings filed after the issuance of mandate from the Supreme Court to the trial court, and upon which amended pleadings the judgment from which this appeal is prosecuted was rendered.

It seems that Quesenberry filed a plea of intervention in the suit, asserting his right to any compensation that might be awarded in Harrington's name upon the last trial; his claim being that of an assignee under the assignment to him by Harrington, noted above, Harrington filed an answer to that intervention, in which a rescission of the assignment was sought on the ground that the same was procured by fraud, and was for damages by reason of such alleged fraud. It was agreed by all parties ,here that upon the final trial of the case the plea of intervention, and also the cause of action asserted against Quesenberry by Harrington, were both withdrawn, and that proper orders were made by the trial court to that effect. Although such orders do not appear in the transcript, they will be treated as having been properly made, and no complaint has been made in this court thereof.

█ Harrington likewise pleaded that his execution of the purported assignment to Quesenberry of the cause of action was induced by fraud practiced by the insurance company through Quesenberry and other persons acting as its duly authorized agents, and that therefore the same was not binding in any event, and should be annulled and set aside. In his pleadings, Harrington further attacked the validity of the transaction on the ground that, if the instrument was an assignment, it was forbidden by the Workmen's Compensation Law, which expressly provides that any attempted assignment of such a claim would be void, and that, if the transaction amounted in law to an attempted settlement of the cause of action by the insurance company, it was likewise void because the same was contrary to other provisions of the same act.

The record conclusively shows that the purported assignment of the cause of action to Quesenberry was merely a form designed to evidence a settlement of Harrington's claim against the insurance company, who furnished the $2,200 paid therefor; Quesenberry taking the assignment in his name for the use and benefit of the insurance company. The record shows that the sum of $2,200 was paid to induce Harrington to make the purported settlement, which settlement the insurance company pleaded as a complete bar to Harrington's suit. Harrington further pleaded

that he did not receive but $200 of the amount so paid by the insurance company. In his pleadings he offered to allow that sum as a credit upon the claim asserted by him against the insurance company .

Upon the trial, Harrington testified that Quesenberry and other representatives of the insurance company came to his room at a hotel in Dallas, while he was confined in bed from illness, bringing with them the assignment to be executed by him. He testified that he did execute and deliver it at that time, and that the insurance company paid the sum of $2,200 therefor; but he further testified that the money was turned over to his wife, who was with him at that time, and not to him, and that afterwards he never received from his wife but $200 of that amount. But his testimony further shows without doubt that the receipt of the money by his wife was with his consent and approval, and that after its payment he voluntarily went with her to a bank, where he and she had a joint checking account, and she deposited the money to her credit in his presence, with his knowledge, and without any objection from him.

The testimony of the persons representing the insurance company in the transaction, and that of the notary public who took Harrington's acknowledgment to the purported assignment, was all to the same effect. We therefore conclude, as a matter of law, that he was chargeable with the receipt of the $2,200 to the same extent as if there had been a manual delivery of it to him, and it would have been improper to submit that issue to the jury as a controverted issue of fact.

Since the settlement was made without the approval of either the Accident Board, or the Supreme Court, or the District Court, it could not of itself be given the effect of a final satisfaction of Harrington's cause of action, as so to do would be in violation of the terms of the Workmen's Compensation Law, as held by the Supreme Court in Employers' Indemnity Corporation v. Woods, 243 S. W. 1085.

However, we are of the opinion that the insurance company was entitled to a credit for the $2,200 upon any lump sum amount awarded to Harrington upon the trial of the case, even though the settlement made was not binding upon Harrington as a full satisfaction of his cause of action. It would be inequitable to allow him to retain the amount he had thus received, and at the same time award him full compensation, as though no such payment had been made.

The general rule applicable to compromise settlements, when the same are invoked against suits involving the matters covered by the settlement, is that, before the plaintiff can be heard in a court of equity to question the binding effect of the contract, he must offer to restore what he has already received. Hunt v. Turner, 9 Tex. 385, 60 Am. Dec. 167; Ledyard v. Brown, 27 Tex. 393, and other authorities which might be cited. However, it is likewise the rule that, in case a settlement is made of an ordinary claim for damages for personal injuries resulting from the negligence of another, under circumstances and conditions surrounding the party receiving the amount paid, such as surrounded Harrington in the present suit, after he has spent the money received for actual necessities and is unable to make a restoration thereof, and the contract of settlement is attacked by him for fraud in its procurement, it is not incumbent upon him to tender back the consideration received as a condition precedent to his right to sue upon the original demand. It is sufficient if the amount which he is entitled to recover upon the merits of the case is in excess of the amount paid, and the defendant is given credit therefor; but the claimant will be denied a recovery, if the amount of damages he has proven does not exceed the amount he has already received. G. H. & S. A. Ry. Co. v. Cade (Tex. Civ. App.) 93 S. W. 124 (writ of error refused); T. & P. Ry. Co. v. Jowers (Tex. Civ. App.) 110 S. W. 946 (writ of error refused).

In Employers' Indemnity Corp. v. Woods (by Commission of Appeals) 243 S. W. 1085, which is the leading authority cited by appellee, it was held that a lump sum settlement of a claim under the Workmen's Compensation Law, which is not approved by the Accident Board, or by any court having jurisdiction of the claim on appeal from its decision, is no bar to the claim. Several other decisions are to the same effect. But in International Coal & Mining Co. v. Industrial Commission, 293 Ill. 524, 127 N. E. 703, 10 L. R. A. 1010, it was held, in effect, that while a settlement of such a claim without the approval of the Accident Board would not be a bar to a suit on such claim, the insurance company paying such claim would be entitled to a credit for the amount so paid up to the time of final settlement by the commission. That decision is cited with approval in Employers' Indemnity Corp. v. Woods, supra, although that particular question was not involved in that case. Indeed, in his pleadings, Harrington recognized this right in appellant, by offering to allow a credit on any judgment he might recover of the amount he had already received in settlement, which, however, he contended was limited to the sum of $200.

Nor was there fundamental error in the judgment for lack of proof by Harrington that his employers had in their employment at least three employees, as insisted by appellant, by reason of the provisions of section 2 of article 8306 of the Workmen's Compensation Law. Having issued the policy sued on, purporting to cover injuries to all employees of the partnership firm insured, and having failed by proper pleading and proof to question the validity of the policy on that ground in the trial court, and thus overcome the prima facie case made by Harrington, it is

in no position to do so in this court for the first time. . See, also, West Lumber Co.. v. Morris (Tex. Civ. App.) 257 S. W. 592, in which it was held that, if an employer has three or more employees at the time he becomes a subscriber, he shall remain a subscriber, even though thereafter the number of his employees be reduced to less than three, following the provisions of the Workmen's Compensation Law, shown in section 2 of article 8306, Rev. Civ. Statutes of 1925.

Accordingly we are of the opinion that the amount of compensation allowed Harrington in the judgment, over and above $240, which he admits was paid to him by the company immediately after the injuries and by reason thereof, to wit, $7,607.08, should be credited with the sum of $2,200 received by him in the purported settlement, with interest thereon from March 3, 1927, the date of said payment, to September 27, 1927, the date of the judgment in the trial court, at the rate of 6 per cent. per annum, in lieu of the credit of only $200 and interest thereon, allowed by the trial court; and that the judgment of the trial court should be so reformed as to limit his recovery to the balance remaining after allowing that credit; the amount of such balance to be apportioned to Harrington and his attorneys, W. L. Scott and Davenport & Crain, on the same pro rata basis as fixed by the judgment.

As so reformed, the judgment of the trial court will be affirmed. All costs of this appeal will be taxed against the appellee.

### On Motion for Rehearing.

The evidence showed that appellee employed his counsel of record to prosecute this suit for him and agreed to pay for their services 32½ per cent. of his recovery, and that the settlement with appellant occurred after such employment, and while those counsel were performing services thereunder. The proof further shows that the attorneys so employed have never received any part of $2,000 of the amount paid to appellee by appellant for said purported settlement, and that those attorneys are entitled to be compensated for their 32½ per cent. thereof, to wit, $650, out of the amount awarded to appellee by the judgment of this court on original hearing. Accordingly the motion of appellee for a reformation of our former judgment in such manner as to allow his counsel such additional compensation is granted, and the judgment of this court is so reformed as to read as follows:

In lieu of the judgment of the trial court, judgment is here rendered as of date September 29, 1927, the date of the judgment in the trial court, as follows: That the appellee, C. F. Harrington, and his attorneys, W. L. Scott and Davenport & Crain, do have and recover of and from appellant, New Amster-

dam Casualty Company, as principal, and the United States Fidelity & Guaranty Company, surety on the appeal bond for appellant herein, the sum of $7,807.08, the amount adjudged below, less $2,200 received by the appellee, C. F. Harrington, in the purported settlement, with interest thereon from March 3, 1927, to September 27, 1927, to wit, $68, making a total credit of $2,268, leaving a balance of $5,539.08, with interest on said amount of $5,539.08, at the rate of 6 per cent. per annum from the 27th day of September, 1927, and, as thus reformed, the judgment of the trial court is hereby affirmed. It is further ordered that the judgment be apportioned as follows: $3,088.88 of the principal to appellee, C. F. Harrington, and the balance of the principal to wit, $2,450.20, to W. L. Scott and Davenport & Crain, attorneys. It is further ordered that appellee, C. F. Harrington, pay all costs incurred by reason of this appeal, for which let execution issue, and that this decision be certified below for observance.

With this reformation of our former judgment, appellee's motion for rehearing is overruled. And in this connection we will add that appellee is in no position to claim interest on the amount allowed him prior to the date of the trial, since no assignment of error was filed by him presenting that claim.