## MEYER, WEIS & CO. vs. GEO. C. BALDWIN.

1. AGENCY. *Ratification of acts of agents. Liability of principal.*

   The agent, by his position of manager of a plantation of his principal, has no authority to contract debts, on the credit of his employer, for which he will be held responsible. In the absence of express authority by the principal to contract debts, the creditor, in order to charge the principal, must show that he held him out to the public or to the creditor as his authorized agent to make accounts, or that he ratified his act in making them, or that the action of the principal was such as to induce the reasonable belief that the agent was authorized to make the account or contract the debt.

2. SAME. *Ratification of unauthorized acts of agents.*

   The receipt by the principal of the fruits of an unauthorized act of the agent is not a ratification, without full knowledge by the principal.

ERROR to the Circuit Court of *Bolivar* County.

Hon. C. C. SHACKLEFORD, Judge.

The material facts proved in the case are stated in the opinion of the court.

It is assigned for error :

1. In sustaining demurrer to defendants' 2d and 3d pleas.

2. In overruling objections to the introduction of evidence to sustain the account, it not being properly itemized.

3. In giving each charge asked by plaintiff below.

4. In refusing the charges asked by defendants below.

5. In modifying plaintiff's charge and refusing a new trial.

Among other instructions the court below gave for plaintiff below the following :

"1. If the jury believe, from the evidence, that the plaintiff sold the goods and furnished the money in his account to Turpen, as agent for Meyer, Weis & Co., and that he was such agent, or that defendants, by their words, conduct, or actions had reasonably produced the general impression that he was their general agent, then they must find for plaintiff."

"2. A subsequent ratification of an act done by an agent, or by one who assumes to be an agent, is usually as binding on the principal, if made with a full knowledge of the act done, as if there had been a previous authority, and the recognition need not be express, but may be shown by circumstances."

"3. The principal receiving the fruits of an unauthorized act of an agent, it is a ratification."

The following instructions asked by defendants were refused by the court:

"1. That no agency can be established except by the acts of the principal; a general impression that a person is an agent, when such impression is not made by the acts of the principal, will not charge the principal for acts done by such pretended agent."

"3. That an agency to carry on a plantation does not carry with it an agency to borrow money, or to create accounts with merchants for supplies or clothing for the laborers."

"5. That authority to a plantation manager to buy small lots of goods at home does not carry with it authority to create large accounts with country merchants, when the owners of the plantations themselves are merchants and capable of supplying all the wants of the plantation."

The trial resulted in a verdict for the plaintiff below, and the case comes to this court on writ of error.

*Harris & George*, for plaintiffs in error:

In questions of agency two questions arise: 1st, as to the real and actual authority of the alleged agent; and, 2d, as to his apparent authority, or what acts have been done by the principal which would induce others to suppose the

alleged agent had authority. All of these questions are alluded to in the charges, and both are made the basis of defendants' liability. The testimony does not warrant the belief that Turpen had a real authority. A power annexed to an overseer or manager to buy from a particular person does not include the power to purchase *ad libitum* from any person whatever. The power to manage and cultivate a plantation, as manager and superintendent, does not include the power to buy goods or borrow money on a credit (Davis *v.* Richardson, 45 Miss., 507; Prince *v.* Crawford [MSS.], October term, 1874), and *a multo fortiori* it does not include the power for the manager to borrow money for his own use and buy family supplies on the credit of the owner; and money so borrowed and supplies so purchased for Turpen's own use are all that is in controversy here, the others having been fully paid for.

The agent had no real power to make the unpaid part of the account, or in fact any part of it. There is as little ground for the position that Turpen had the apparent power, or that the defendants had held him out to the public or to the plaintiff as possessing such power. See Collyer on Part., § 97. What were the acts of holding out? The drafts were drawn from time to time by Turpen on his own name, and not as agent, on defendants. They were mere requests by Turpen.

2. The instructions given are manifestly erroneous. The court should have explained to the jury the kind of agency which should exist in order to make the defendants liable, and not left this to the determination of the jury. See Young *v.* Powers, 41 Miss., 197; Baldwin *v.* McKay, 41 ib., 358; Gremade *v.* Mills, 31 ib., 464; Lockhart *v.* Luker, 36 ib., 68; Mullins *v.* Cotrell, 43 ib., 710. An agent has no power to buy or borrow for his own benefit, and the jury should have been so instructed. Cohea *v.* Hunt, 2 S. & M., 227; Baker *v.* Kelley, 41 Miss., 696; Planters' Bank *v.* Cameron, 3 S. & M., 609.

The 3d instruction for defendants was correct. See Davis *v.* Richardson, *supra*.

The 5th charge should have been given. The 7th charge was manifestly correct. It is difficult to imagine a reason for the refusal of this charge. It was applicable to the facts in the case.

*F. A. Montgomery*, on the same side.

*W. L. Nugent*, for defendant in error :

The real point in the case was the liability of the plaintiffs in error for the account sued on, and the authority of Turpen to make the debt. His authority may be fairly predicated upon the proof.

Meyer testified that Turpen was *their agent in the management of the plantation;* his authority extended *to all duties* connected with the cultivation of the place. October 18, 1873, they wrote : " It will be satisfactory for you to get the money from Mr. Baldwin to pay cotton pickers." They complain of the drafts drawn, yet they do not deny to Turpen the right to draw. Dealings with Baldwin had run through the year 1872, and continued in 1873. Drafts had been drawn, accepted, and paid. The account sued on is correct ; was made by Turpen, as he says, as agent for the firm. Turpen informed Baldwin that he was agent for the firm, and was making the account for them. The money and supplies were used on the place, and for the payment of hands and cotton pickers, and for the benefit of the firm. Turpen is still the agent and on the place. Baldwin corroborates all the statements made by Turpen.

1. Turpen was employed to take charge of the plantation and manage it for defendants, who were cotton factors in New Orleans. A general agent is one whom the principal puts in his place to transact his business of a particular kind, and his acts, in the scope of his duty, bind the principal. See Planters' Bk. *v.* Cameron, 9 S. & M., 609 ; 2 Kent, 617 ; 13 Johns., 58 ; 2 Ark., 338 ; 25 Me., 13 ; 9 Barn. & Cres., 78 ; 12 Wend., 413 ; 2 Greenlf., 373.

2. The firm for several years permitted Turpen to hold himself out as agent to the public and especially to Baldwin,.

Apr. T. 1876.]    MEYER et al. vs. BALDWIN.                267

Opinion of the court.

and there can be no doubt of the liability.    2 Kent, 614, 615 ;
Harvy v. Blanshaw, 13 N. H., 145 ; Brownson v. Chappell,.
12 Wall., 681 ; Wean v. Ogleton, 39 Ga., 586 ; Goedy v.
Merchant, 43 Ala., 705 ; Caldwell v. Noell, 21 La. An., 342 ;
Fay v. Richard, 43 Vt., 25.

3. The benefit of all the supplies and money furnished by
Baldwin were accepted by plaintiffs in error.    The orders given
to the negroes were charged to them, and taken out of the
cotton grown by them, so that the plaintiffs in error are not
the losers.    It is shown that these supplies and money were.
necessary to the efficient conducting of the plantation business.
Moon v. Ryan, 26 Wis., 356 ; Williams v. Storm, 6 Coldw.
(Tenn.), 203 ; Burris v. Yeaser, 27 Miss., 188.

CAMPBELL, J., delivered the opinion of the court.

In 1871 plaintiffs in error had acquired a plantation in Bolivar
county, and contracted with one Turpen to manage and control
it, as their agent, and to cultivate it for their account, and they
agreed to advance everything for the plantation, and to pay
the expenses of Turpen and family, who was to repay the
advances for himself and family, if sufficient profits were made ;
and if there were any profits Turpen was to have half, and if
there were none he was to lose only his time.    In June, 1871,
Turpen took possession of the plantation, and purchased of
defendant in error some things for the plantation and some for
himself, and, when the account amounted to $90, gave defendant
in error a draft on plaintiffs in error, which was paid.    In 1872
Turpen, as agent of plaintiffs in error, made an account with
defendant in error, in the name of plaintiffs in error, "similar to
the account in this suit," and drew during the year on plaintiffs
in error at different times, in favor of defendant in error, for some
$500, and all the drafts were paid.    At the end of the year 1872
Turpen drew on plaintiffs in error in favor of defendant in error
for the balance of the account of 1872, being some $700,
and sent them the account, "which was for family and planta-
tion supplies, and other items similar to the account sued on,'"

but in the account of 1872, sent to plaintiffs in error, there was no indication of items charged to Turpen for his own family expenses, but all the items were charged to plaintiffs in error, although the account did contain charges for goods furnished for family use, with nothing to show that they were not for plantation supplies. The draft for $700, for balance of the account of 1872, was paid, and no objection to it was ever signified by plaintiffs in error. In 1873 Turpen, as agent of plaintiffs in error, continued to deal with defendant in error, "getting money and supplies and giving him drafts (on plaintiffs in error) for a portion of the accounts, which were paid." At some time (not stated when) plaintiffs in error had written Turpen they preferred he should buy from "Frank & Reinach," as they would wait for payment until the end of the year, but defendant in error agreed to do the same, and Turpen wrote plaintiffs in error, informing them that defendant in error "would also sell to them on a credit, and that, as his store was in sight of the plantation, to save time and trouble, he (I) preferred to deal with him. To this they made no objection." The account of 1873 amounted to $4,007.55, and consists, for the most part, of items for "cash paid Turpen," or orders given and signed by him in favor of different persons, sometimes described by name, and sometimes as "sundry persons," and sometimes as "cotton pickers." The account is made up partly of various items of merchandise. One item is as follows, viz.: "*J. A. Turpen's account rendered, $437.27.*" The account is credited with $2,330, being the aggregate of twelve different drafts by J. A. Turpen on plaintiffs in error, varying in amount from $60, the lowest, to $400, the highest in amount, and the first in time bearing date February 14, 1873, and being for $200, and the two next being in March, 1873, and together amounting to $160, and the others consisting of drafts drawn, one each in the remaining months of the year after March, excepting August, in which there was none, and there being two in July. The account of defendant in error against plaintiffs in error, thus made out, was presented

to Turpen, as agent of plaintiffs in error, and was found by him to be correct, and he drew on plaintiffs in error in favor of defendant in error for the balance due, as stated, and sent the account to plaintiffs in error, who refused to pay it, and wrote to Turpen that he had no authority to make an account against them with defendant in error.

Turpen states that plaintiffs in error did not have information that he was making an account against them in 1873 further than that afforded by the several drafts drawn on them by him as stated. The item charged, "*J. A. Turpen's account rendered, $437.27,*" was the individual account made by Turpen, but to be paid by plaintiffs in error as part of their account, and charged separately to Turpen at his request, but with *his* assurance of its payment by plaintiffs in error as part of their account. *Defendant in error had never had any correspondence or communication of any sort with plaintiffs in error.* Turpen told him he was their agent. The money and supplies furnished by defendant in error all went to the use of the plantation of plaintiffs in error, and all of the cotton produced on the plantation was received by them.

These are the facts of this case as furnished by defendant in error and his witness Turpen, the agent on the plantation of plaintiffs in error. An attachment was sued out by defendant in error against plaintiffs in error, and a recovery had by him of the balance of his account produced as related above.

The question involved is the liability of the plaintiffs in error for the account made on their credit by Turpen, their agent, to manage and control their plantation.

It is clear that Turpen, merely by virtue of his position as manager and controller of the plantation of plaintiffs in error, did not have authority to contract an account on the credit of his employers for which they can be held responsible.

It is equally clear that, in the absence of an express authorization by plaintiffs in error to Turpen to incur debts to be discharged by them, the creditor, in order to charge them, must show that they held Turpen out to the public or to him as their

authorized agent to make accounts to charge them, or that they ratified his act in making the account, or that the action of plaintiffs in error was such as to induce the reasonable belief in the mind of defendant in error that Turpen had authority to make an account in 1873 which they would be responsible for.

From the instructions asked and obtained by plaintiff below it appears that the reliance to obtain a verdict was not on an express authorization to Turpen to contract liabilities to be paid by his principals, the plaintiffs in error, but it was on a holding out by defendants below of Turpen as their agent, and ratification by them of his acts, and their so acting as to induce plaintiff below reasonably to believe that Turpen had authority to make the account.

Not wishing to intimate an opinion on the evidence, we address ourselves to the consideration of the instructions.

The 1st instruction for plaintiff below is erroneous in not containing the idea that the agency of Turpen must have extended to making the account sued on as a charge against defendants. It was not enough that he was their agent. He must have been their agent to contract the debt sued for. The latter clause of this instruction is also objectionable in that it does not inform the jury what a general agent is.

The 2d instruction is erroneous in announcing the effect of a ratification by the principal of the unauthorized act of an agent, without informing the jury of what amounts to a ratification, or furnishing any guide on the subject.

The 3d instruction for plaintiff below is clearly wrong. It tells the jury that the receipt by a principal of the fruits of an unauthorized act of an agent is a ratification. Clearly not, without full knowledge by the principal. Story on Agency, § 253, note 1.

All of the instructions asked by defendants below (seven in number), except, perhaps, the 2d and 4th, should have been given. The 6th only was given, and it was modified by erasing the last clause, which was applicable to the state of the evidence, and proper. The objection to the 2d instruction is a

want of clearness in expression, and that to the 4th is that it does not include the idea of want of authorization by plaintiffs in error to Turpen to purchase from defendant in error on their credit.

The judgment is reversed and *venire de nove* awarded.