70    193
f92    242
d92    543

## P. FAIRLY *v.* D. A. NASH.

1. PARTNERSHIP. *What constitutes. Sharing net profits. Intent.*

   An agreement to share in the net profits of a business is not a conclusive test of a partnership. The intent of the parties, if not inconsistent with the terms of the contract, will control.

2. SAME. *Case in judgment.*

   Nash and Skellinger agreed that Nash should furnish the money and buy goods, and Skellinger should "take charge of the business as agent and manager for Nash, and devote his whole time and attention to it, for which services he should receive half the net profits after paying debts, expenses and advances by Nash." The sign at the store was "W. S. Skellinger, agent for D. A. Nash." *Held*, not a partnership.

3. SAME. *Character of contract. Minor stipulations.*

   The character of said contract, as creating a mere agency and not a partnership, is not changed by other stipulations in it, relating to mere details of management, such as employment of clerks, keeping books, stated accountings, and division of profits, and the requirement that such agent shall also divide profits derived from any outside business engaged in by him.

4. AGENCY.   *Manager.   Power to bind principal by note.*

  An agent, having general authority to manage his principal's mercantile business, has, by virtue of his employment, no implied power to bind his principal by making, accepting or indorsing negotiable paper.

5. SAME.   *Execution of note.   Principal not bound thereon.*

  Although a note executed by such general agent, signed in his name as agent, was for money borrowed to pay debts of the business, the principal is not liable in an action *on the note*, whatever may be his liability if sued on the common counts for the money so used.

FROM the circuit court of the first district of Hinds county. HON. J. B. CHRISMAN, Judge.

The opinion states the facts.

*Brame & Alexander*, for appellant.

The features of the contract indicating a partnership are as follows:

1. Sharing net profits.   This is *prima facie* a test of a partnership.   No intent to create a mere agency appears on the face of the agreement.   1 Lindley on Partnership, 34; 1 Bates on Partnership, § 15; *Wood* v. *Thompson*, 22 How. (U. S.), 330; *Lynch* v. *Thompson*, 61 Miss., 354; *Tharp* v. *Marsh*, 40 *Ib.*, 158; 114 Mass., 114; 105 N. C., 283; 127 Pa., 442.

. 2. The debts were payable, not by Nash, but out of the business.   Even the share of Skellinger was not a debt against Nash.   He could not sue Nash at law.

3. Each had a voice in selecting clerks, and the books were always open to both.

4. Skellinger's profits were as contingent as Nash's. Neither could draw out any thing until an accounting.   The machinery for terminating the relation was as complicated as in partnerships.   Skellinger had the right to compel the application of the assets to the payment of debts.

5. No time was fixed for the duration of the relation.   The interests could be separated, and a settlement had, only in chancery.

6. Skellinger was to divide the profits of any other venture. Surely, he was not a mere agent in so doing.

Even as general agent, Skellinger had the implied power to protect the business from ruin. Debts were unpaid, and accumulating. In borrowing money to pay them, no new or greater liability was incurred. The outstanding debts were valid. Skellinger, having express power to make debts, had an implied power to provide, by borrowing, for their payment.

Finally, if not technically liable on the note, Nash is liable as for money had and received. No pleadings are necessary in the justice court. If, under the evidence, defendant is liable, it was error to grant the peremptory instruction.

*D. Shelton,* for appellee.

1. The contract itself terms the parties *principal and agent,* not partners. The sign proclaimed the agency.

2. Nash, as principal, furnished the money, and Skellinger conducted the business as " agent and manager " for Nash.

3. No power to borrow money or execute interest-bearing notes is conferred.

The foregoing provisions negative the idea of a partnership. Sharing the net profits cannot change the character of the agreement. There was no contract to share loss. Nash's investment was to be returned. If lost, he could not recover of Skellinger half of it. There was no mutual sharing of profits, each as a principal trader. See Collier on Partnership, §§ 25, 27; Story on Partnership, § 55.

As the agreement shows an intent to create Skellinger merely a superintending agent, this intent will control.

An agent has no implied power to bind his principal by borrowing money and executing notes. In this case, no express authority was shown, and the instrument, by expressing certain powers, excludes all others.

*E. E. Baldwin,* on the same side.

Argued orally by *C. H. Alexander*, for appellant, and *E. E. Baldwin*, for appellee.

COOPER, J., delivered the opinion of the court.

In July, 1890, D. A. Nash, the appellee, and one W. S. Skellinger entered into a written contract, the terms of which were as follows :

" It is agreed between said parties that the said Nash shall furnish the money to purchase the stock and fixtures of Isydore Schwartz, at No. — South State street, Jackson, Miss., and to fill out said stock, as may be necessary for the purpose of carrying on said business; that the said Skellinger shall take charge of the business, as agent and manager thereof for the said Nash, and shall devote his whole time and attention to the carrying on thereof, for which service he shall receive one-half of the net profit of the said business, after payment of the advances of the said Nash and the debts and expenses ; that a clerk, to be agreed upon by the said parties, shall be kept, who shall keep the books of the concern ; that the books shall be open to both of said parties, and a general settlement between them shall be had every six months, when an inventory of the stock shall be taken, and the debts and accounts listed, and the amount of the net profit for the six months determined. And it is further agreed upon by and between said parties that if the said Skellinger shall, during the time when the agreement is in force, engage in any other business outside of that provided for in this agreement, out of which should arise any profits, such profits shall be divided by him with the said Nash, and shall, monthly, render to said Nash a statement of any such other business engaged in by him, and the profits thereof, and pay to said Nash the half of said profits. The said business is to be carried on as heretofore, as a confectionery, fruit and cigar and tobacco business ; the sales are to be for cash, and the credit purchases shall not exceed two hundred dollars outstanding at any one time.                      D. A. NASH,
                                 W. S. SKELLINGER."

Under this agreement the business was conducted, a sign being over the door, on which were the words " W. S. Skellinger, agent for D. A. Nash."

Skellinger opened an account with the Capital State Bank in his name, as agent, depositing the money arising from said business, and drawing checks thereon in discharge of accounts for goods bought by him therein. On December 2, 1890, the Capital State Bank had for collection a number of drafts, drawn on Skellinger, agent, for goods bought by him in conducting the business under the contract with Nash, and there was no money in bank to the credit of Skellinger, agent.

To raise money with which to discharge these claims, Skellinger applied to the appellant, Fairly, to become surety upon a note for $100, payable to the Capital State Bank, and represented to him that, as agent for Nash, he had full authority to make the note. Relying upon this representation, and the fact that Skellinger was the recognized agent of Nash to conduct the business, and was so conducting it, Fairly joined in the execution of the note with Skellinger, who signed the same " W. S. Skellinger, agent," intending thereby to bind Nash as his principal. The bank discounted the note, and placed the proceeds to the credit of Skellinger, agent, who drew checks upon the fund thus created in payment of the accounts due in the business of Skellinger, agent for Nash; and, in the payment of such accounts, the amount was exhausted, except as to about eleven dollars, which amount was paid out on the order of Skellinger, agent, to one Carraway—who was the father-in-law of Nash—but on what account this payment was made does not appear in evidence.

When the note above spoken of matured, Skellinger failed to pay it, and Fairly, the surety, being called on by the bank, paid the amount to the bank, which indorsed thereon the words:

" Transferred without recourse to P. Fairly.
CAPITAL STATE BANK,<br>By E. M. PARKER, <i>Cashier</i>,"

and delivered it to Fairly. Fairly thereupon filed the note, as his cause of action, with a justice of the peace, and caused process thereon to be issued against Nash and Skellinger.

Skellinger made no defense, and a judgment by default was taken against him. Nash filed a plea of *non est factum;* and, a judgment having been rendered against him by the justice of the peace, appealed to the circuit court, where, upon the development of the facts as above set forth by the witnesses for the plaintiff, the court gave a peremptory instruction for the defendant, Nash, and there was a verdict and judgment for him, from which Fairly appeals.

It is contended for the appellant:

1. That the contract between Nash and Skellinger constituted a partnership between them;

2. That, if Nash and Skellinger were not partners, then Skellinger was the agent of Nash, having authority, real or apparent, to bind him by the note;

3. That the money raised by Skellinger and Fairly from the bank, having been applied to the payment of debts which were obligatory on Nash, he has, in contemplation of law, received money which, *ex æquo et bono,* should be repaid to the bank, and to Fairly, as its assignee, if Nash repudiates the authority of Skellinger to bind him by the note, and, for this, he is liable to this action.

The feature of the agreement principally relied upon to establish the existence of a partnership is that Skellinger was to receive a part of the profits, and, as the appellant contends, a right to call Nash to an accounting every six months.

In the earlier cases in which this question was considered, the receipt by one of a part of the profits of a business, fixed upon him the character of a partner as to third persons, "upon the principle that by taking a part of the profits he takes from the creditors a part of that fund which is the proper security to them for the payment of their debts." *Grace* v. *Smith,* 2 Blackstone, 998; *Waugh* v. *Carver,* 2 H. Blackstone, 235 (1 Smith's Lead. Cas., 908).

But it has, since these decisions, become well settled that the mere sharing of the profits of a business does not constitute one a partner. The question is whether the profits are taken as in a distribution of a joint estate, in which event there is a partnership, or, on the other hand, as compensation for services as an agent or servant, the title in such profits passing to such person by the act of distribution and not in the accumulation, in which case the contract is one of principal and agent, and not of partnership.

In the leading case of *Wheatcroft and Cox* v. *Hickman*, 9 C. B., N. S., 47, the subject was fully considered, and the rules now prevailing settled. In that case Lord Cranworth said: " It is often said that the tests, or one of the tests, whether a person not ostensibly a partner is nevertheless in contemplation of law a partner, is whether he is entitled to participate in the profits. This, no doubt, is in general a sufficiently accurate test, for a right to participate in profits affords cogent, often conclusive, evidence that the trade in which the profits have been made was carried on in part for or on behalf of the person setting up such claim. But the real ground of the liability is, that the trade has been carried on by persons acting on his behalf. When that is the case, he is liable to the trade obligations, and entitled to the profits, or a share of them. It is not strictly correct to say that his right to share in the profits makes him liable to the debts of the trade. The correct mode of stating the proposition is to say that the same thing that entitles him to the one, makes him liable to the other, namely, the fact that the trade has been carried on in his behalf, *i. e.,* that he stood in relation of principal towards the persons acting ostensibly as the traders, by whom the liabilities have been incurred, and under whose management the profits have been made."

The subject has been further considered by the English courts in *Pooley* v. *Driver*, 5 Ch. Div., 458; *Ex parte Tennant*, 6 *Ib.*, 303; *In re Wedgwood*, 7 *Ib.*, 75; and while there has been some criticism upon the language of Lord

Cranworth and of that of the other judges in *Cox* v. *Hickman*, the rule that a participation in profits is not conclusive evidence of partnership, is always recognized. Such participation is evidence of a partnership, and, in the absence of countervailing evidence, will control. *Tharp* v. *Marsh*, 40 Miss., 158; *Lynch* v. *Thompson*, 61 *Ib.*, 354. But the question is one of intention, and a contract of partnership will no more be created by the courts against the will of a party than will those of any other character.

One may not make a contract of partnership, and, calling it an agency, have it treated as such by the courts; for, when the facts are known, the law fixes the legal consequences which flow from them. Neither may one secure the benefits of the relation of a partner, and, by contract, secure immunity from its obligations as against creditors. But when the contract is susceptible of the construction put upon it by the parties at the time it was made, such construction will be accepted by the courts as the true one. The American and English cases supporting these propositions will be found collected in the note to the case of *Waugh* v. *Carver*, 1 Smith's Lead. Cas., 908.

In the contract between Nash and Skellinger we find a manifest purpose not to create a partnership contract. The agreement was that Skellinger should " take charge of the business as agent and manager for Nash, and shall devote his whole time and attention to the carrying on thereof, for which service he shall receive one-half of the net profits of the said business, after payment of the advances of the said Nash and the debts and expenses."

The other stipulations in the deed do not in any manner affect the character of the contract. They have relation to details of the business by which the amount of the profits may be discovered, and the periods at which the payments to Skellinger shall be made. Stress is put by counsel upon the fact that very broad powers are given to Skellinger, and that, in fact, the entire control and management of the busi-

ness is intrusted to him. But such is very generally the case in sales on commission by one for another. The question is not whether Skellinger was agent for Nash, or, if he was, how extensive were his powers, but whether Nash was also agent for Skellinger, for, if there was a partnership, each partner was authorized to do whatever both might do in the prosecution of the firm business. We are of opinion that no partnership existed between the parties, but that the business was that of Nash, the management of which was intrusted to Skellinger, as his agent.

2. Skellinger, as agent for Nash, had no authority to bind him by the execution of the note to the bank. "An agent, having general authority to manage his principal's business, has, by virtue of his employment, no implied authority to bind his principal by making, accepting or indorsing negotiable paper." Mechem on Agency, § 398; *Perkins* v. *Boothby*, 71 Maine, 91; *New York Iron Mine* v. *Negaunee Bank*, 39 Mich., 644; *Sewanee Mining Co.* v. *McCall*, 3 Head, 619.

3. The plaintiff was not entitled to recover on the ground that the money raised by the agent had been devoted to the payment of debts binding on Nash, for the reason that this is an action *on the note*, and not upon a *quantum valebat*. While in suits before a justice of the peace no written pleadings are required, it is necessary for the plaintiff to indicate the nature and character of his suit by lodging with the justice "the evidence of debt, statement of account, or other written statement of the cause of action." Code of 1880, § 2190.

It seems to be well settled that where an agent exceeds his authority in the execution of a negotiable instrument, and the money received thereon is devoted to the business of the principal, he must, in repudiating the act of his agent, restore the amount received and used for his business; and if he does not, an action may be maintained, not on the instrument, but upon the common counts. *Merchants, etc., Bank* v. *State Bank*, 10 Wallace, 604; *Mayor, etc.,* v. *Lindsey*, 19 *Ib.*, 485; *Perkins* v. *Boothby*, 71 Me., 91.

Upon the case as made, the court properly instructed the jury to find for the defendant, and the judgment is

*Affirmed.*

