LIPSCOMB *v.* STATE.*

(Division A. Dec. 5, 1927.)

[114 So. 754. No. 26078.]

1. EMBEZZLEMENT. *State held not to have burden of showing employer did not owe employee anything.*

Where state, on prosecution for embezzlement, has shown defendant collected money belonging to his employer, failed to account therefor, and concealed it by adroit false bookkeeping, and remained silent when called on to explain, state has not burden of negativing possible defense by showing that employer did not owe defendant anything on account of promised commission.

2. PARTNERSHIP. *Joint ownership in business is necessary to constitute one a "partner;" mere sharing in net profits not being enough.*

   To constitute defendant in embezzlement a partner with, instead of an employee of, the one from whom he is charged to have embezzled, there must be a joint ownership in the business, and a mere agreement of the other to pay him as compensation for services a certain per cent. of the net profits is not enough.

3. EMBEZZLEMENT. *Instruction held not to require more than that jury must agree embezzlement was of twenty-five dollars or more.*

   Instruction, · on prosecution for embezzlement, that, if defendant had converted to his own ,use as agent, at any one time, an amount to the extent of twenty-five dollars or more, jury should convict, *held* to require no more than that jury must agree that embezzlement at one time was of twenty-five dollars or more.

---

*Corpus Juris-Cyc. References: Embezzlement, 20CJ, p. 482, n. 34; p. 490, n. 87; Partnership, 30Cyc, p. 370, n. 10; p. 376, n. 25; p. 413, n. 15. Ownership in business and not merely agreement to share profits necessary to create partnership, see annotation in 18 L. R. A. (N. S.) 1016; 20 R. C. L. 829; 3 R. C. L. Supp. 1103.

APPEAL from circuit court of Lauderdale county.

HON. R. M. BOURDEAUX, Judge.

B. O. Lipscomb was convicted of embezzlement, and he appeals. Affirmed.

*Reily & Parker, Jacobson & Brooks* and *Chas. B. Cameron,* for appellant.

It was conceded in the court below and the instructions were based thereon, that the appellant could not be convicted if the funds handled by him were partnership funds. *Ward* v. *State,* 73 So. 865. We do not think that it is necessary that the business should be jointly owned in order to constitute partnership and that this feature of the instruction was clearly erroneous. *Berthold* v. *Goldsmith,* 16 L. Ed. (N. S.) 762, 30 Cyc. 367, 440; *Whiting* v. *Leakin,* 7 Atl. 688; *Howell* v. *Howell,* 99 Mass. 71; *Meserve* v. *Andrews,* 104 Mass. 360. Under these authorities, we insist that the requirement in the instruction of the court

that there should be a joint ownership of the business in order to constitute a partnership, was erroneous and misleading to the jury.

In instruction No. 3, Record, p. 743, the court directed the jury that if they found from the evidence beyond a reasonable doubt that the defendant while acting as an agent, clerk or employee of Lee M. Harris, feloniously converted the property of Lee M. Harris to his own use to the extent of twenty-five dollars or more, at any one time, he should be convicted. We think that it was improper to permit the trial of this case to cover a period of three years and hundreds of items and permit the jury to convict for any one item when the state had not elected any such item and without specifying in the instruction any particular item, leaving the jury with permission to convict the appellant even though the twelve jurors be not required to agree on which item the state would stand. We think this instruction is further erroneous by reason of the fact that the evidence in this case shows conclusively that the appellant in this case actually owned an interest in all the money handled by him and the right of control and dominion over the same. 20 C. J. 416. By the granting of instruction No. 4 for the state, the jury was directed that if Harris and Lipscomb did not intend to form a partnership and that Harris should be the sole owner of the business and retain complete control of said business and that Lipscomb should work for Harris on a commission basis then there could be no partnership. It is our contention that the sole ownership of the business being in Harris does not preclude a partnership and that the sole control of the business by one of the partners fixed by agreement does not preclude the existence of a partnership but that the partners may by agreement give any portion or all of the authority or control to one of the partners. 30 Cyc. 447; *Gill* v. *Crosby*, 63 Ill. 190.

With these two features eliminated, the instruction directed the jury that the existence of a partnership de-

pended upon the intentions of the parties, which we think is erroneous. 30 Cyc. 357; 40 Am. Rep. 465; *Bowman & Cockrell* v. *Ed. Blanton & Company,* 132 S. W. 1041.

The court erred in refusing the following instruction: "The court charges the jury that under the testimony in this case, the defendant had a legal right to collect money due the business in which he was engaged and to pay out such funds and to draw checks on the funds in the bank and even though you may believe from the testimony beyond every reasonable doubt that the defendant did not handle these funds properly or make accurate accounts thereof, that this does not necessarily mean that he has been guilty of violating the law." See 20 C. J. 431.

In all cases of a profit-sharing contract, whether the same is oral, the relation of the parties is to be established by the speech and conduct of the parties in relation to the subject-matter, to show whether they are partners or not. 18 L. R. A. (N. S.), 1105, n.

The court erred in refusing the following instruction: "The court instructs the jury for the defendant that if the agreement between Lipscomb and Harris was such that if Lipscomb handled and appropriated to his own use the funds which came into his own hands, that the only relation existing between them was that of debtor and creditor, then the defendant is not guilty and the jury should so find." 20 C. J. 431, 9 R. C. L. 1274.

All partnerships are based upon agreement, and such agreement may be either expressed or implied and established by either direct or circumstantial evidence. 20 R. C. L. 847, par. 52. In deciding whether a partnership has been proven, the item of sharing profits has been held to be strong evidence of its existence. *Boreing* v. *Wilson,* 108 S. W. 914. It is a *prima-facie* inference according to Judge SMITH in *Eastman* v. *Clark,* 16 Am. Rep. 192, and the participation in the profits of the business is presumptive evidence of a partnership. *Meehan* v. *Valentine,* 36 L. Ed. 835; *Bentley* v. *Brossard,* 94 Pac. 736; *Fairley* v. *Nash,* 12 So. 149.

The court erred in refusing the following instruction: "The court charges the jury for the defendant that if Harris authorized the defendant to use the funds coming into his hands for his own use and Harris knew the defendant was handling the funds in the way in which they were handled, or if the jury entertain a reasonable doubt as to whether or not this is true, the jury should find the defendant not guilty." 20 C. J. 431.

The court erred in refusing the following instruction: "The court charges the jury that if you believe it was agreed between Lee M. Harris and the defendant that the defendant might use the funds of the business in a certain way, and the defendant in good faith handled such funds as he understood from such agreement that he had a right to do, then such using of such funds would be no violation of the law even though defendant was mistaken in his understanding of such funds in such manner." 20 C. J. 436; *Staples* v. *Johnson,* 25 App. (D. C.) 155.

An agreement to pay and a settlement is evidence of good faith which should go to the jury in connection with all of the other evidence of the case. 20 C. J. 456.

*S. A. Witherspoon,* for appellee.

The court did not err in making joint ownership the test as to whether a partnership existed, but if we be mistaken, then under the decisions of this court no partnership may exist except where there is such a joint ownership, and we call the attention of the court to the following authorities, all of which are Mississippi cases, and for that reason are considerably more persuasive in this court than the appellant's authorities, none of which are Mississippi cases: *McGraw* v. *Pulling,* Freem. Ch. 357, digested in Miss. Dig.; *Van Duzer v. Zimmerman Lumber Co.,* 43 So. 177; *Fairly* v. *Nash,* 70 Miss. 193, 12 So. 149. See, also, *Cudahy Packing Co.* v. *Hibou,* 92 Miss. 234, 46 So. 73, 18 L. R. A. (N. S.) 975 and note; 22 Am.

& Eng. Enc. Law (2 Ed.), pp. 22, 27 and 28; *Miller* v. *Simpson*, 18 L. R. A. (N. S.) 975; Mechem on Partnership, p. 33.

Complaint is made against instruction No. 3 on the idea that it was improper to let the trial of the case cover a period of three years and hundreds of items and permit the jury to convict for any one item when the state had not elected any such item, and without specifying in the instruction any particular item. Counsel say that this would leave the jury with permission to convict the appellant even though the twelve jurors be not required to agree on which item the state would stand.

The policy of the state in including all of the many items embezzled by Lipscomb in one indictment so that the defendant would serve only one term in the penitentiary for the whole thing, rather than a separate term for each item of twenty-five dollars or more, is manifestly not a cause for complaint on the part of the defendant. There is nothing in the instruction that tells the jury that if part of the jury believe that Lipscomb was guilty of embezzling one twenty-five dollar item, and another part of the jury believe that he was guilty of embezzling a different twenty-five dollar item, that then they were to convict him. If the defendant had any idea that any member of the jury would have so little sense as that, his counsel should have asked an instruction guarding against this supposedly grave danger. *Starling* v. *State*, 90 Miss. 255, 43 So. 952; *Richberger* v. *State*, 90 Miss. 807; *Davis* v. *State*, 108 Miss. 710, 67 So. 178.

The refusal of an instruction, laying down as one of the necessary prerequisites to a verdict or not guilty, that the jury must believe that there was an agreement to share the losses, and counsel say themselves that there was no such evidence of any such agreement, could certainly not be hurtful to the appellant because if such an instruction was given the jury, the only thing they could do, if they followed its direction, would be to convict the appellant. Appellant cites the following cases:

*Boreing* v. *Wilson,* 108 S. W. 914; *Eastman* v. *Clark,* 16 Am. Rep. 192; *Meehan* v. *Valentine,* 36 L. Ed. 835; *Bentley* v. *Brossard,* 94 Pac. 736; *Fairley* v. *Nash,* 12 So. 149. All of these cases hold that a participation in the profits of a business is some evidence to establish a partnership. The state, of course, does not contend that a participation in the profits of a business is not evidence tending to prove a partnership, and quite a number of instructions were given, for both the state and the defendant, in which sharing the profits is mentioned as one of the elements and one of the evidences of a partnership. No error can be predicated in this case on the correctness of this rule.

None of appellant's objections to the rulings on admissibility of evidence are well taken. *In Hemingway* v. *State,* 68 Miss. 422, the language of Judge Thomas H. Woods, one of Mississippi's greatest judges, in the greatest embezzlement case ever tried in this court, appears to us to be peculiarly applicable to the case at bar. In that case Judge Woods said: "But where the sweep of an irresistible tide of evidence would, despite all immaterial errors of court, or reprehensible lapses from propriety of counsel, bear an enlightened mind and conscience to a fixed conclusion of guilt, the appellate court may not properly reverse."

Argued orally by *Chas B. Cameron,* for appellant, and *S. A. Witherspoon,* for appellee.

McGowen, J., delivered the opinion of the court.

On an indictment for embezzlement, the appellant, Lipscomb, was convicted and sentenced to a term of five years in the penitentiary. The indictment charged that Lipscomb embezzled and converted to his own use, as the clerk, agent, and servant of Lee M. Harris, money, bank notes, checks, bills of exchange, and promissory notes

to the amount of about three thousand dollars, by virtue of his employment as such agent of Harris.

This record is so voluminous, as well as the briefs filed by counsel in the case, and the whole record so demonstrates the correctness of the verdict of the jury as to render it unnecessary for us to undertake to detail fully the evidence in the case.

The appellant filed a suggestion of error, assigning eighty grounds for reversal, which we shall not undertake to set out, but shall group them on the main points argued in the brief.

Lee M. Harris employed B. O. Lipscomb in July, 1922, to work for him; Harris being engaged in the casualty insurance business which had been conducted by him for many years in Meridian, Miss. Harris was agent of several insurance companies, and, as such agent, his business consisted in writing and issuing policies of casualty, plate glass, and boiler insurance, and also in issuing fidelity and other kinds of bonds in behalf of the United States Fidelity & Guaranty Company.

Harris was the only witness who gave the details of the oral contract of employment made between him and Lipscomb at the time of his employment. Lipscomb did not testify in his own behalf, and the testimony of Harris is to the effect that he (Harris) employed Lipscomb, the defendant, as clerk, bookkeeper, and cashier, a general clerk in the office, Harris' testimony being as follows:

"Q. State the terms of the employment. A. He was to work for me on a commission basis. It was a verbal contract—no written contract. I was to pay him twenty-seven and one-half per cent. of the net commission; that is, the net profits of the business.

"Q. What do you mean by net commissions? A. That is, after we deduct all of the legitimate expenses —commissions paid other agents, and things like that.

"Q. All right, in return for such compensation, what was Mr. Lipscomb to do for your business? A. He was

to keep the books, help collect the money, solicit business, and do anything else he was called on to do.

"Q. Well, did that contract remain in force during the whole time of his employment? A. No, sir.

"Q. When did he cease to work for you? A. March 15, 1925.

"Q. And he began, you say, when? A. July, 1922.

"Q. Between that time what change was made, if any, in the compensation that you allowed Mr. Lipscomb? A. I increased his compensation on February 1, 1923, to thirty per cent. of the net commissions—the net profits.

"Q. You raised his wages from twenty-seven and one-half per cent. to thirty per cent. then? A. Yes, sir."

Early in the year 1923 Harris became ill, and for a long time was unable to give personal attention to his business. He made thirty-two trips to New Orleans to the hospital, and was in the office only a short time. When Harris was able to evince an interest in his business, in the early part of 1925, finding his bank account depleted, he desired an audit of his books, and thereupon Lipscomb left his employ. Two audits of his books were made, one by Crook on the assumption that the entries on the books in the office, and on the deposit slips, were correct, and that audit resulted in his ascertainment that Lipscomb's shortage with his employer, Harris, amounted to more than one thousand eight hundred dollars. The other audit was a checking up of deposit slips and books with the bank books and books of customers, and disclosed a further shortage amounting to more than one thousand two hundred dollars.

The state, in tracing the funds paid into the hands of Lipscomb for Harris, did so with great particularity, and the amounts so traced varied, at times, from five dollars to more than one hundred dollars, the entire record disclosing to us the fact that when Harris became ill, Lipscomb began a systematic appropriation to his own use of the funds of Harris, and an adroit concealment of his

(Lipscomb's) peculations by false entries in reference to items and checks received, saying, when asked by the auditor and Harris concerning same, "I got that, and did not turn it in," and, "That is another one of those things," but offering no explanation, and making no denial, and no claim of right to the money. As an instance of his system, he would collect the full amount due from a customer, and credit the account with part payment instead of the full amount paid, and would make two deposit slips, one to take to, and leave with, the bank, appearing to be an original, and another appearing to be a copy, which reduced the amount of the checks received. In some instances, the difference between the deposit slips was taken in cash by Lipscomb at the bank, which amount so thus taken would be, on the same day, credited to Lipscomb's private account. There were other instances where he collected money and made no entry at all, and these sums exceeded twenty-five dollars in more than one instance. In other words, there was a shameless taking, and an adroit concealment, from the employer, Harris, of the true condition of his customers' accounts, and of the proceeds of collections made by Lipscomb for Harris. Lipscomb had almost exclusive management of the insurance business, and he undertook to conceal his shortage by false entries on the books of Harris, and by false deposit slips, which deposit slips, the ledger accounts, and customer's accounts would be alike, but would be unlike and totally different from the deposit slips delivered to the bank with deposits of currency, drafts, and checks of customers given in payment of their accounts. The entries made by Lipscomb show a systematic betrayal of this trust by a trusted employee with his absent and sick employer.

The business of Harris was conducted under the sign "Lee M. Harris." People of all stations in life, bankers and customers, who dealt with Harris, all testified that the business was conducted and known as the business of Lee M. Harris. The witnesses' statements were to the

effect that Lipscomb so stated, and that he complained because Harris would not give him a partnership in the business. No disinterested witness tsetified to anything in contradiction of this state of affairs, save two relatives, who testified for the defendant that Harris had stated to them that Lipscomb was a partner in the business.

It is evident to our mind, from the entries made on deposit slips and books, and the deposits in the bank, that Lipscomb kept a separate account for himself of his peculations, and we think this is clearly demonstrated by the fact that the false entries would be made as to recent collections, and the money so thus collected would be credited partially to the accounts of parties who had previously paid in full, but whose accounts showed a balance due to Harris on such books so kept by Lipscomb. Lipscomb, having practically the exclusive management as stated, of said business during this long period of time, necessarily did all the things that the owner of the business would have done, so far as the management of the business was concerned, such as making collections, writing insurance policies, making deposits, and making settlements with creditors and debtors.

1. We have considered the objections to the testimony in detail, and we find that no evidence was improperly excluded by the court on the objection of the defendant, or permitted to go in over his objection, that was not material and pertinent to the issue, and we find no reversible error in the many objections and exceptions reserved to the evidence as the trial progressed.

2. Counsel insists that the duty devolved upon the state to show that Harris did not owe Lipscomb anything on account of the thirty per cent. commission promised him.

We content ourselves with saying that, when the state has shown that Lipscomb collected money belonging to his employer, failed to account therefor, and concealed it by adroit, false bookkeeping, the burden is not upon the

state to negative a possible defense as against the items traced into his hands; but, having shown the conversion, and that it was unlawful, concealed, and misrepresented to Harris, as reflected by the entries made on the books by Lipscomb himself, together with his admissions made to the auditor and Harris, and his remaining silent when various items of shortage were called to his attention and he was called upon to explain, for this court to hold that the burden was put upon the state to prove that the defendant had no defense, or set-off, would be to declare the law against embezzlement, on the part of a faithless employee, to be vain and futile, and render it entirely unenforcible.

3.  The instructions given by the court upon the theory of partnership interposed by appellant in the court below were more than fair to him, he taking the position there, and in this court, that, because he was to receive a percentage of the net profits, the law created a partnership between him and Harris, and, that being true, and Lipscomb being the partner of Harris, could not be guilty of stealing his own funds when he took money belonging to the partnership.  This theory is unsupported by the evidence in the case, in the light of the fact that Harris testified that the agreement between them was that they were to sustain to each other the relation of employer and employee, and that they were not partners, and that, on two or three occasions, the idea of forming a partnership, suggested by Lipscomb, was declined by Harris.  The court embodied in all of the instructions that, in order to create a partnership, there must be a joint ownership of the property or business, and counsel for the appellant has been diligent in citing opinions of various courts upon this question; but, where a principle of law has been established for a long time, and not varied by our own court, we do not feel inclined to harmonize the views of the various courts, contenting ourselves with the observation that there are authorities sustaining counsel's view that there does not have to be a joint

ownership of property in order to create a partnership. Let it be borne in mind that we are dealing with a case where the parties involved are dealing *inter sese*. In the case of *McGraw* v. *Pulling,* Freem. Ch. 357, it was held that:

"To constitute a partnership as between the parties thereto, there must be a joint ownership of the partnership property, and an agreement, either express or implied, to participate in the profits and share the loss of the business."

In the case of *Fairly* v. *Nash,* 70 Miss. 193, 12 So. 149, in which the only difference from the case at bar being that the contract there was written, and in the instant case it was oral, the court held on the state of facts:

"N. and S. entered into a written agreement that S. should take charge of the business (store) as agent and manager for N., and devote his whole time to the carrying on thereof, for which services he should receive one-half the net profits after payment of the advances of N., and the debts and expenses. Held, that the agreement created no partnership, but that the business was N's, with S. as his agent,"

—and Judge COOPER, speaking for the court said: "But it has since these decisions become well settled that the mere sharing of the profits of a business does not constitute one a partner. The question is whether the profits are taken as in a distribution of a joint estate, in which event there is a partnership, or, on the other hand, as compensation for services as an agent or servant; the title in such profits passing to such person by the act of distribution, and not in the accumulation, in which the contract is one of principal and agent, and not of partnership."

The evidence in this case shows that there was to be no partnership, and that a partnership was distinctly refused, and this is undisputed, save for the testimony of relatives, which only went to the credibility of Harris, being his statement to these relatives that Lipscomb was

his partner.  The testimony of Harris absolutely contradicts and negatives any evidence of partnership, or any implication thereof, arising from the fact that Lipscomb was to be paid a part of the net profits.  The facts are known in this case, and the law fixes the *status* of the parties.  There is no evidence of any contract save that detailed by Harris, and Lipscomb's acts, and Harris' acts, show that the parties construed his relation to be that of employer and employee throughout the entire period of time that Lipscomb was engaged in the management of Harris' business.

As we view the instructions for the state, they submitted to the jury the rule we have quoted *supra,* and such instructions were properly given, as well as those refused for the defendant were properly refused, on the theory of partnership; and, in this view, we are sustained by the authorities already quoted, as well as *Van Duzer* v. *Zimmerman Lumber Co.* (Miss.), 43 So. 177, and the case of *Cudahy Packing Co.* v. *Hibou,* 92 Miss. 234, 46 So. 73, 18 L. R. A. (N. S.) 975.  In the latter case, the syllabi state a rule which has been adopted and approved by other courts in this country, as follows:

1.  "Profit sharing has been almost universally abandoned as the conclusive test of partnership.

2.  "There must be the intention of the contracting parties to carry on a business and share the profits between them as common owners or joint proprietors of the business.

3.  "Where the intention is to share the profits, not as common owners, but as a personal debt due from some of the associates to the others, the amount of which is measured by the profits, the persons so sharing profits are not partners."

Besides this, in at least one of the instructions the appellant adoped the joint ownership theory to which we have adverted, by his own instruction given to the jury.

We conclude that it was not unfavorable to the appellant to submit to the jury, in the light of the testimony

in this case, for their determination, the question whether or not there was a joint·ownership in this business, or simply an agreement on the part of Harris to pay to Lipscomb thirty per cent. of the net profits.

We think there was no error in these instructions for the state, as a whole, and those given for the defendant on the theory of partnership.

4. Appellant's only·other contention to which we shall advert is that he complains of Instruction No. 3, because the jury were told that, if the defendant had converted to his own use as agent, at any one time, an amount to the extent of twenty-five dollars or more, it was the duty of the jury to convict, and he complains that these audits were for a period of three years, and many items were submitted to the jury, and that it was error not to select a specific item. He also complains that the jury might not be agreed, and each juror, for instance, might select a different item. The instruction is not susceptible of this construction because the instruction was addressed to the whole jury that, if they agreed that the defendant has embezzled twenty-five dollars or more, at any time, etc. However, in effect, this instruction has been approved by this court in the case of *Davis* v. *State,* 108 Miss. 710, 67 So. 178, wherein Mr. Justice Cook, with reference to a similar instruction, said:

, "The contention seems to be that the representative for the state, in asking this instruction, elected to stand on one item. We do not so understand. We assume that the district attorney intended to inform the jury that they could not convict the defendant unless they believed he had embezzled as much as twenty-five dollars. In other words, defendant was indicted for a felony, and the district attorney did not ask a conviction for less than a felony. However that may be, we cannot see that the defendant was, in any way, prejudiced by the instruction, as it gave him more than he was entitled to receive."

We do not view this instruction as requiring more than that the jury must agree that the embezzlement was

of twenty-five dollars or more by the defendant; but,
if our construction of it is erroneous, in the light of all
the facts, we do not think the appellant was harmed there-
by.

*Affirmed.*