CHASE NAT. BANK *v.* CHAPMAN.

(Division B. March 25, 1935.)

[160 So. 286. No. 31604.]

334

Cooper & Thomas, of Indianola, for appellant.

**Moody & Johnson,** of Indianola, for appellee.

338

Argued orally by **Forrest G. Cooper**, for appellant, and by **Elbert Johnson**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

Appellant brought this action in the circuit court of Sunflower county against appellee on two promissory notes dated November 3, 1931, one for one thousand forty dollars, and the other for one thousand fifty-four dollars and fifty cents, alleged to have been executed by appellee to the Bank of Indianola and transferred to appellant by that bank. The notes appeared to have been executed by appellee and P. C. Chapman; appellee being the wife of the latter. Appellee filed a plea of non est factum properly verified. At the conclusion of appellant's evidence, on motion of appellee the evidence was excluded and the jury directed to return a verdict for appellee, which was done, and judgment accordingly entered. From that judgment appellant prosecutes this appeal.

Appellee was the wife of P. C. Chapman, who died previous to the bringing of this suit. The name of the wife was signed to the notes sued on by her husband. The notes were also signed by him. Appellant's contention is that P. C. Chapman had at least implied authority to execute the notes for his wife. The court necessarily held that the evidence showed there was no such authority, otherwise a directed verdict for appellee would

not have been granted. The question, therefore, is whether or not the husband was authorized to execute the notes for his wife.

The wife owned a plantation of about eight hundred acres near Indianola; she had owned this property probably for more than twenty years. In addition, she owned real estate in the town of Indianola. Her husband, P. C. Chapman, owned no real estate whatever. He was a lawyer; his law firm was counsel for the Bank of Indianola. The notes involved were executed to the Bank of Indianola for borrowed money, and transferred by that bank to appellant for value before maturity. For many years before, and up to the time of his death, P. C. Chapman had had complete and exclusive management and control of all of his wife's real estate; the plantation and the town property. The evidence in the case, however, was addressed principally to the years 1929, 1930, and 1931. The husband's income appears to have been alone from his law practice, and during the last year or two of his life he had practically retired from practice because of ill health. The wife had absolutely nothing to do with the management and control of her plantation and town property. Her husband took charge of it, and she admitted, as a witness in the case, managed it as he saw fit. She left everything to him; he contracted with the tenants and the laborers and furnished them the necessary supplies to make the crops; he sold the cotton; he received the checks therefor and indorsed them and deposited the proceeds in the Bank of Indianola. He bought farm implements and fertilizer for the plantation. He borrowed money in 1929, in 1930, and in 1931, from the Bank of Indianola, with which to finance the farming operations. He paid all the taxes on his wife's property and kept up the improvements. During the year 1929, for the purpose of financing her farming operations and paying taxes on her property and for family living

expenses, he borrowed from the Bank of Indianola something like thirteen thousand dollars, for the payment of which he executed notes signing his wife's name and his own thereto. The proceeds of this loan were placed in the Bank of Indianola to the credit of the wife, C. B. Chapman, and during the year were checked out by him alone. He signed his wife's name to all of the checks. During several months of that year he gave her monthly checks against these funds to pay household and living expenses. These checks were in the sum of one hundred dollars. He signed her name to them, they were payable to her, and she indorsed them and got the money from the bank.

Again in 1930 and in 1931 it became necessary to borrow money with which to finance the wife's property. The notes involved were in part a carry over balance from the 1930 loan. In 1930 and in 1931, instead of placing the funds borrowed to the credit of the wife, as in 1929, he placed them to his own credit. So, during those two years, instead of checks being drawn against the funds in the name of the wife they were drawn in the name of the husband. As best can be ascertained from the evidence, this change was made for convenience alone.

The Bank of Indianola knew of the husband's financial condition; it knew that he owned no real estate or personal property, and that during the last year or two of his life, on account of ill health, his income from his law practice was small. He occupied the dual relation to the bank of legal adviser and borrower for himself and wife. The evidence showed that the loans made by the bank were largely on the wife's credit and not on that of the husband. It was her property the bank relied on principally as the basis of the credit.

It is true that the wife denied on the witness stand that she authorized her husband to sign the notes; that she even knew that he was borrowing money from the bank

to finance her properties, but she admitted on cross-examination that her husband had complete and exclusive control and management thereof, that she turned everything over to him—"yes, he ran everything." She was asked if it was necessary to borrow money, whether or not she left that to him, to which she replied, "I guess so, if he had asked me, but he didn't ask me anything." She was also asked this question: "Since you left everything to him, trading with the tenants, buying seed, selling cotton and everything, if it were necessary to borrow any money, you left that to Mr. Chapman too, didn't you?" To which she replied, "Yes."

Appellant contends that under the evidence the husband had at least implied authority to borrow money to finance his wife's affairs, while appellee argues that the directed verdict in her favor was justified upon the principle that her husband, as her general agent, had no implied authority to bind her by issuing negotiable paper in her name.

At the outset, it might be very well to have in mind that, although the notes involved are negotiable instruments, appellant is claiming no greater right thereunder than the original payee, the Bank of Indianola, had. In other words, the case stands exactly like it would if the notes were nonnegotiable. It is true, as contended by appellee, that a general agent has no implied authority to bind his principal by making, accepting, or indorsing negotiable paper, unless such authority necessarily exists from powers expressly conferred. If the business carried on by an agent necessitates the borrowing of money in order to carry it on, such power is impliedly conferred as a necessary incident to the employment. 21 R. C. L., sec. 39, p. 862, and sec. 45, pp. 870, 871.

Here the evidence tended to show that the wife knew her husband was borrowing money during the years 1929, 1930, and 1931, in order to manage and finance her prop-

erties and to pay living expenses, and that she knew it was necessary to do so, and acquiesced therein. He was commissioned to control and manage her properties as he saw fit. If borrowing money was necessary to carry out the commission, as the evidence tends to show it was, he had the right to borrow it.

To sustain the action of the court appellee relies principally on Meyer v. Baldwin, 52 Miss. 263, and Fairly v. Nash, 70 Miss. 193, 12 So. 149. We do not think either of them in point in this case. In the Meyer Case the court held that in the absence of express authority a plantation manager had no right to contract debts for his principal, unless the latter held his manager out to the public as authorized to do so, or afterwards ratified his action, or that the action of the owner was such as to induce the reasonable belief that the manager was authorized to contract debts for his principal. In the Fairly Case the court held that a general agent in charge of a mercantile business had not, by virtue of his employment, implied power to bind his principal on negotiable paper; but where the proceeds of such negotiable paper were used by the agent to pay the debts of the principal the court said there might be liability on the common counts for money so used.

Here we have the power conferred by the wife on the husband to do a certain thing which could not be done, according to the evidence, without the borrowing of money by him. In other words, the two things could not be separated; they went together. The directed verdict for appellee necessarily meant that in the judgment of the court the evidence justified no other reasonable inference than that the husband was without either express or implied authority to borrow the money and execute the notes. We think the court erred. Certainly, there is ample evidence to justify the inference that the husband had implied power. Having reached this con-

clusion, we deem it unnecessary to pass on the question whether section 1943, Code of 1930, making the husband the statutory agent of the wife under the conditions named therein, has any application to the facts of this case.

We do not pass on the question of whether or not appellant was entitled to a directed verdict; it was not asked for; therefore, the question is not presented.

Reversed and remanded.